## McCORMACK v. JAMES.

*(District Court, W D. Virginia. May 27, 1886.)*

1. EQUITY—PRACTICE—MASTER'S REPORT—STATEMENT OF FACTS.
    Under U. S. equity rule No. 76, providing that masters' reports shall recite no part of any state of facts, etc., used before them, but shall refer to and specify such state of facts, so as to inform the court what state of facts was used, a commissioner's report need not state what facts he considers proved by the evidence.

2. SAME—SCOPE OF REFERENCE.
    A commissioner may allow charges for improvements on real estate, although that matter was not embraced in the decree of reference, where the question is raised by the pleadings, and the parties examined witnesses as to the value of such improvements, and agreed to submit the same to arbitration, and the master adopted the award.

3. MORTGAGES—DEEDS OF TRUST—RECORDING—BONA FIDE PURCHASER.
    Under Code Va. 1860, c. 118, § 5, providing that every deed of trust of real estate shall be void as to creditors and subsequent purchasers for a valuable consideration without notice, until it is admitted to record, a recorded deed of trust of real estate is notice to a subsequent purchaser.

4. SAME—ACKNOWLEDGMENT—CERTIFICATE.
    A certificate of acknowledgment to a deed of trust certifying that H. J., "whose name appears signed to the within deed, came this day before me, R. C W., acting justice for said county, and acknowledged the same to be his act and deed, and desired me to certify the same to the clerk of the county court of said county, that it may be duly recorded," is a substantial compliance with Code Va. 1860, c. 121, § 3, requiring such certificate to be to the following effect: "I, ——, a justice of the peace in the county aforesaid, in the state of ——, do certify that ——, whose name is signed to the writing above, (or hereto annexed,) bearing date on the —— day of ——, has acknowledged the same before me, in my county aforesaid,"—and is sufficient.

5. SAME—RIGHTS OF BENEFICIARY—ESTOPPEL—IN PAIS.
    A beneficiary under a recorded deed of trust is not estopped from asserting his lien as against a subsequent purchaser of the land by having merely been cognizant of and participated in the negotiations culminating in a sale to such purchaser.[1]

In Equity. On exceptions to commissioner's report.
*Campbell & Trigg, Daniel Trigg,* and *Seldon Longley,* for plaintiff.
*White & Buchanan,* for defendant.

PAUL, J. On the 25th day of April, 1861, Hansford James, of Smyth county, Va., executed to James Ward a deed of trust conveying to said Ward a tract of land lying in said county, to secure certain creditors.

---

[1] On the subject of estoppel by conduct and declarations, see McDowell v. Steel-Works, (Ill.) 16 N. E. Rep. 854, and note; Guest v. Opera-House Co., (Iowa,) 38 N. W. Rep. 158, and note; Towne v. Sparks, (Neb.) 36 N. W. Rep. 375; Matthews v. Warner, 33 Fed. Rep. 369; Marrow v. Brinkley, (Va.) 6 S. E. Rep. 605, and note.

therein named, a preference being given to David E. James, to whom he owed one bond of $2,226, and some other smaller amounts. This deed was duly admitted to record in the clerk's office of the county court of Smyth county on the day of its execution, April 25, 1861. In March, 1862, said David E. James assigned his interest in said trust deed to Henry Horne; and in May, 1863, the said Hansford James, the grantor in the deed of trust, sold the said tract of 280 acres of land to the plaintiff, Micajah McCormack, at the price of $7,500, in Confederate currency, of which sum said McCormack paid cash $6,500, and executed his bond for $1,000, payable two years after date, the date being May 9, 1863. Said McCormack was put in possession of said land in the fall of 1863, and remained in possession thereof until June 24, 1870. On the 30th day of May, 1868, the said Hansford James filed his petition in bankruptcy, and was adjudicated a bankrupt thereon. In his schedules in bankruptcy said Hansford James surrendered the said tract of 280 acres of land on which the deed of trust to Ward was given, and which he had sold to Micajah McCormack in 1863; and in November, 1868, said land was sold by G. J. Holbrook, the assignee in bankruptcy of said Hansford James, and at said sale David E. James, the preferred creditor in the deed of trust to Ward, became the purchaser at the price of $1,500. In November, 1868, Micajah McCormack filed his bill before Hon. JOHN C. UNDERWOOD, United States district judge for the district of Virginia, praying for an injunction against the assignee of Hansford James, bankrupt, and said David E. James, from further proceedings in said sale to David E. James, and that a title be decreed to said McCormack for said land. On the 9th of December, 1868, a restraining order was awarded, as prayed for in the bill. To this bill Hansford James, David E. James, and G. J. Holbrook, assignee in bankruptcy of Hansford James, filed their answers; but on the 24th of November, 1869, the injunction granted December 9, 1868, was dissolved. On the 24th of June, 1870, an order was entered declaring David E. James entitled to the possession of said land, and ordering the marshal to put him in possession thereof. By an order entered April 3, 1872, at Richmond, the cause was removed into the court of the Western district, at Abingdon. On a motion made November 21, 1872, to reinstate the injunction, and for a rehearing, the bill was dismissed, with costs to the defendants. November 28, 1874, McCormack filed a bill of review, to which David E. James filed his answer, and on the 12th day of June, 1875, the decree of November 21, 1872, dismissing McCormack's bill, was reversed and annulled, and the injunction dissolved by order of November 24, 1869, was reinstated; the sale made by Holbrook, assignee of Hansford James, bankrupt, to David E. James was set aside, vacated, and annulled, and a writ of possession awarded McCormack for the land. The order says further:

"It appearing to the court that there is a lien asserted against said land by David E. James, which he claims is prior in date to plaintiff's purchase, and that the lien is still subsisting and valid; and it further appearing that there is still a balance of purchase money due from the plaintiff, and that he claims to be entitled to rents and profits for the use of said lands during the time

that he has been dispossessed thereof,—it is ordered that he so amend his bill as to bring these matters, and any others he may be advised, before this court."

In pursuance of this order, McCormack filed his amended and supplemental bill, October 1, 1875, to which the defendants David E. James and Hansford James filed their answers October 21, 1875. In the mean time, on the 19th of August, 1875, said David E. James filed his petition, praying that the said Micajah McCormack be compelled to pay the debt of $2,225, secured in said deed of trust, due said James, and that said McCormack, W. O. Austin, deputy-marshal, their agents, etc., be restrained from executing the writ of possession awarded McCormack by the decree of June 12, 1875. On this petition a restraining order was granted as prayed for. To this petition McCormack filed his demurrer and answer. On the 3d day of November, 1875, an order was entered dissolving the restraining order granted August 19, 1875, and allowing McCormack his costs against James. From this order an appeal was taken to the circuit court. On the 28th day of March, 1876, the appeal was docketed in the circuit court at Lynchburg, and an order issued restraining McCormack from all further proceedings in the district court, until the adjudication of the appeal in the circuit court. On the ———— day of March, 1877, the appeal was heard at Lynchburg, by Judge Bond, the circuit judge, and the decrees of June 12 and November 3, 1875, were affirmed, and the appeal dismissed. From this decree an appeal was taken by David E. James to the supreme court of the United States. In the supreme court the cause was dismissed under the sixteenth rule of that court. Nothing more was done in the case until June 5, 1883, when a decree was entered in accordance with the decree of 1874, and the prayer of the amended and supplemental bill filed by McCormack, October 1, 1875, referring to M. H. Honaker, a special commissioner, to take an account, and report "what liability, if any, attaches to the alleged deed of trust exhibited by the defendant David E. James, with his answer, purporting to convey to James Ward, for the purposes therein mentioned, the land therein mentioned, by said Hansford James, which paper bears date April 25, 1861. What would be a reasonable rent for said land from the 24th of June, 1870, to the 5th day of July, 1875?" The question of rents and profits was, by agreement in writing, signed by the plaintiff and defendant, submitted to the arbitration of James T. Porter and R. C. Williams, as was also the question as to the value of permanent improvements put upon the lands by the defendant, David E. James, during his occupation under his purchase from Holbrook, assignee in bankruptcy of Hansford James. Said arbitrators made their award, which was adopted by the special commissioner, and made part of his report.

The commissioner reports that the debt secured by the deed of trust is a liability attaching to the plaintiff by reason of his purchase of the land conveyed in the trust deed. The substance of the report is that the debt of $2,225 is a lien on the land, and this is the main point of controversy in this cause.

To this report the plaintiff, McCormack, files exceptions, marked 1, 2, 3, 4, and 5. The defendant files exceptions numbered 1 and 2. The second exception by the defendant, which is to the amount of rent allowed McCormack by the commissioner, is withdrawn in the written agreement filed by the defendant's counsel. The remaining exception is for the failure of the commissioner to report certain judgments claimed by the defendant to be liens on the land conveyed in trust. These judgments were excluded, as the commissioner states, for want of sufficient proof. The court is of opinion that the report is correct in this respect, and the exception must be overruled.

The first exception filed by the plaintiff is for failure of the commissioner to report what facts were, according to his view of the evidence, proved. The report is in conformity with the requirements of equity rule No. 76, and this exception must be overruled. For the same reason plaintiff's exception No. 3 must be overruled.

Plaintiff's fourth exception is that the commissioner erred in allowing the defendant, David E. James, charges for permanent improvements put upon the property while held by him under his purchase from G. J. Holbrook, assignee of Hansford James, bankrupt. While it is true, as alleged in the exception, that this matter was not embraced in the decree of reference, yet the question is raised in the pleadings. The parties, plaintiff and defendant, examined witnesses as to the value of the improvements, and the plaintiff and defendant agreed to submit the same to arbitration. They had the power to do this. It was a matter in controversy, and the amount ascertained by the award was properly allowed by the commissioner, and this exception must be overruled.

Plaintiff's fifth exception says: "The evidence shows that the trust debt was paid by Hansford James, and the commissioner should therefore have reported that there was no existing liability by reason of the deed of trust." The evidence, in the opinion of the court, does not show the debt to have been paid; and, granting that the testimony on this question was conflicting, it was the province of the commissioner to determine its weight and credibility. The exception will be overruled.

This disposes of all the exceptions filed by the plaintiff and the defendant, except the second exception filed by the plaintiff. This exception states two grounds which, it is asserted, should defeat the claim of the defendant, David E. James, under the deed of trust of April 25, 1861. The first is "that McCormack is an innocent purchaser for valuable consideration without notice of the deed of trust." The second is "that the defendant, David E. James, participated in the negotiations which culminated in the sale to and the payment by McCormack of almost the entire purchase money, and that David E. James is estopped, by his conduct, to assert his lien by deed of trust."

As to the first ground of exception, there is no principle of law that would seem to be more firmly established by an unbroken line of decisions than that a subsequent purchaser for valuable consideration without notice, in order to be protected, must be a complete purchaser; that is, a purchaser of the legal title, who, before notice of an unrecorded incum-

brance, has both paid the whole of the purchase money and taken a conveyance. This, it must be remembered, is necessary as to an unrecorded conveyance. The following are a few of the many decisions sustaining this doctrine: *Briscoe* v. *Ashby*, 24 Grat. 476, 477; *Shirras* v. *Caig*, 7 Cranch, 34–48; *Vattier* v. *Hinde*, 7 Pet. 274; *Boone* v. *Chiles*, 10 Pet. 211; *Society* v. *Stone*, 3 Leigh, 218–236; *Doswell* v. *Buchanan's Ex'rs*, Id. 381–384. See, also, 2 Rob. Pr. (Old Ed.) 29, 30, 307; 2 Minor, Inst. 1028–1031; *Bank* v. *Manoni*, 76 Va. 802. The only modification of this doctrine to be found in the decisions of the supreme court of appeals of Virginia is in *Preston's Adm'r* v. *Nash*, 75 Va. 949. In that case the court held that a subsequent purchaser without notice of an unrecorded deed of trust was one who had paid the whole of the purchase money, and was entitled to a conveyance. In the case before the court the deed of trust securing James was recorded before the purchase by McCormack, and the purchaser had not paid the whole of the purchase money, so as to entitle him to a conveyance. The facts in the case of *Preston's Adm'r* v. *Nash* are so widely different from those in the case under consideration as not to require discussion. In fact, all of the decisions on this subject of an innocent purchaser for valuable consideration without notice deal with the question of priority arising out of unrecorded deeds, creating liens on the purchased property. None of them involve the decision of the validity of a deed properly executed and recorded, as in this case, prior to the purchase.

In some of the United States, recordation of deeds or other writings required to be registered in accordance with the registry acts is held to cnarge a subsequent purchaser with notice. It is difficult to see how a different view can be held as to a deed of trust properly recorded under the registry acts of Virginia. Chapter 118, § 5, Code Va. 1860, provides that every deed of trust or mortgage, conveying real estate or goods and chattels, shall be void as to creditors and° subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be." The very object of the legislature in enacting this provision was to give the purchaser or other person dealing with the property notice of any incumbrance thereon. For the convenience of persons desiring to investigate the condition of the property, the clerk is required to keep an index of the record-book, as well in the name of the grantor as of the grantee. In order to give further notoriety to such transactions, the clerk is required to post, in the morning of the first day of each term of his court, at the front door of the court-house, a list of all writings admitted to record under chapter 121, Code 1860, during or since the preceding term, and a duplicate of such list is to be presented to the court, and entered of record in the minutes. Code Va. 1860, c. 121, §§ 8, 10. So complete are the requirements for the registration of all matters touching the titles to land, so easy of access is the necessary information, and so general among all classes of people is the knowledge where and how it can be attained, that, in the language of a distinguished law writer, "for one to be deceived ar-

gues in general a negligence so gross as to exclude sympathy for the sufferer." 2 Minor, Inst. 988. But, if we should concede that the deed of trust to Ward was not constructive notice to McCormack, the purchaser, I think the weight of the testimony shows that he knew of the existence of this lien at the time of his purchase. In no view of the case can the court regard him as an innocent purchaser without notice, and thus declare invalid the deed of trust, executed, acknowledged, and recorded in conformity with all the requirements of law necessary to insure the payment of the debt which the trust was given to secure. To do so would be to set a precedent in this court that would sanction the grossest negligence in a purchaser of lands, set at naught the solemn records of our registry acts, by testimony resting on the uncertain memory of witnesses given 25 years after the record has been made, and to render uncertain and insecure the highest assurances that debtors can give for the security of their creditors.

As to the second branch of the second exception, that "David E. James was cognizant of and participated in the negotiations which culminated in the sale, and is therefore estopped by his conduct from asserting his lien by deed of trust," the charges thus made rest upon the unsupported testimony of McCormack, plaintiff. The answer of David E. James, which is responsive to the allegations in the amended and supplemental bill, denies that he participated in the negotiations for the sale, and asserts that McCormack had notice of the lien. The answer of Hansford James, in response to allegations in the amended bill, says McCormack had notice of the lien of David E. James. The testimony of the other witnesses is too indefinite in time and circumstances, or the time fixed as to conversations with McCormack on the subject of the lien is too remote from the date of sale, to be entitled to much weight. Fraud, actual or constructive, is the essential and central element (2 Pom. Eq. Jur. § 821) in an equitable estoppel. "Now, the principle of estoppel invoked by the appellants to preclude the appellees from setting up in this case a title in themselves as heirs of Clark, discharged of the trust, rests upon the ground of fraud." Judge JOYNES in *Bargamin v. Clarke*, 20 Grat. 552. Kerr, Fraud & M. 130; 1 Story, Eq. Jur. § 391. "He who alleges fraud must clearly and distinctly prove the fraud he alleges." Kerr, Fraud & M. 382, 383. If the case here stood alone upon the testimony of the plaintiff, McCormack, and the answer of the defendant, James, the answer must prevail, and the charge of fraud is unsustained. Id. 398. The language employed by the defendant, David E. James, during the negotiations between McCormack and Hansford James, were we to admit that he used it, could not, we think, amount to an estoppel, had the equity been a latent, instead of a recorded, lien; for at that time David E. James had no interest whatever in the deed of trust, he having assigned his interest therein to Henry Horne more than 12 months before. The language attributed to him by McCormack, which is: "He asked me what was the reason I did not buy Hansford's land. Said that I must buy it; it would enable him to buy the Mitchell Scott land, and pay every dollar he owed in the world,"—shows

an anxiety on his part to see his relative and partner in business, Hansford James, get out of debt; and this seems to have been one of the objects of Hansford James in selling, for we find him, after getting part of the purchase money from McCormack, trying to pay off the deed of trust debt to Henry Horne, who then held it, but who refused to receive Confederate money. David E. James had no interest in the debt at that time, nor did he have any until four years thereafter, when he repurchased it. He could have had no motive in concealing the existence of the deed of trust, or for fraudulently influencing McCormack to purchase the land.

It is to be noted that the cases of estoppel referred to by the counsel for the plaintiff, and cited by the text writers, are instances of latent, concealed, or unrecorded incumbrances. See 1 Story, Eq. Jur. §§ 398, 399. No case has been cited in argument, and the court has found none in the investigation of this question, where the beneficiary in a recorded deed of trust or mortgage has been estopped from asserting his lien on the ground of concealment, fraud, or misrepresentation to a purchaser of the land. It seems that a registered lien has been regarded by the courts and text writers as constructive notice to the purchaser of the land.

What has been said heretofore with regard to a registered deed of trust being constructive notice to a purchaser for value is equally applicable to this branch of the plaintiff's exception No. 2, and need not be repeated. There were a few other points called to the attention of the court in the argument, but as they are not raised in the pleadings, it is not necessary that they be noticed or acted upon by the court.

There was, however, one question presented to the court, while not raised in the pleadings, which is apparent upon the record, and the court will dispose of it. It is as to the validity of the certificate of the justice taking the acknowledgment of Hansford James to the deed of trust to Ward, dated April 25, 1861. The certificate is as follows:

"*Virginia, to-wit: Smyth County, to-wit:* This is to certify that Hansford James, whose name appears signed to the within deed, came this day before me, Robert C. Williams, acting justice for said county, and acknowledged the same to be his act and deed, and desired me to certify the same to the clerk of the county court of said county, that it may be duly recorded. Witness my hand and seal this 25th day of April, 1861.

"R. C. WILLIAMS, J. P."

The provision of the statute of Virginia, as to the certificate of acknowledgment to be taken by a justice, is as follows:

"Such court or clerk shall also admit every such writing to record, as to any person whose name is signed thereto, upon a certificate of his acknowledgment before a justice or notary public within the United States, written on or annexed to the same to the following effect, to-wit: County of ———, to-wit: I, ———, a justice of the peace for the county aforesaid, in the state of ———, do certify that ———, whose name is signed to the writing above (or hereto annexed) bearing date on the ——— day of ———, has acknowledged the same before me in my county aforesaid.

"Given under my hand this ——— day of ———."

See Code 1860, c. 121, § 3.

It is not necessary that the language of the certificate be identical with that of the form given by the statute. It is only necessary that it conforms to it in effect. The certificate under consideration conforms to the form in the statute in all the necessary elements, and this is all that is required. "It is a substantial compliance in everything material." See *Tod* v. *Baylor*, 4 Leigh, 513; *Siter* v. *McClanachan*, 2 Grat. 294. None of the exceptions to the commissioner's report being sustained, the report will be confirmed.

NOTE. In conformity with this opinion, a decree was rendered May 27, 1886, in favor of David E. James for $4,981.70, the amount ascertained to be due him by Commissioner Honaker's report, with interest on $2,325, part thereof, from October 26, 1885; and awarding costs to defendant; and further directing a sale of the lands in the bill and proceedings mentioned, unless McCormack should, within 60 days thereafter, satisfy the decree. From this decree McCormack appealed to the circuit court, BOND, J. This appeal being heard, the decree of the district court was affirmed, and a decree accordingly was rendered July 15, 1887; from which last decree there has been no appeal.