## LESLIE H. PINNEY *vs.* RUSSELL & Co.

Submitted on briefs Dec. 20, 1892. Decided Feb. 24, 1893.

**Names, Identity of J. W. and John W.**

Evidence, largely circumstantial in its nature, *held* to show the identity of John W. Humphrey, the owner of certain land, as J. W. Humphrey, against whom a judgment was rendered and docketed in the county where such land was situated.

**Same—Sufficient to Put upon Inquiry.**

A record of a judgment against one whose Christian name is indicated only by initial letters is effectual to put upon inquiry a subsequent purchaser of lands the title of which appears of record in a person of the same family name as such judgment debtor, and whose Christian name has the same initial letters.

**Action to Determine Adverse Claims to Land.**

If it appears that the plaintiff, in a statutory action to determine adverse claims to unoccupied land, has no estate or interest therein, he is not entitled to judgment against the defendant.

Appeal by defendant, Russell & Co., a corporation, from an order of the District Court of Chippewa County, *C. L. Brown,* J., made March 23, 1892, denying its application for a new trial.

John W. Humprey purchased of the United States the west half of the southeast quarter of section fourteen, (14,) T. 116, R. 39, in Chippewa County, and on December 15, 1874, he received a patent for it. He sold and conveyed the land March 7, 1877, to Sarah A. Fuller, and she conveyed it to John M. Spicer, and he to plaintiff, Leslie H. Pinney. The land is and ever has been vacant and unoccupied. Nathan S. Russell and others (copartners) recovered a judg-

ment August 26, 1874, in their individual names against J. W. Humphey, M. C. Fitch, and H. M. Humphrey in the District Court for $674.52, and it was docketed in Chippewa County on September 3, 1874. A writ of execution was issued thereon September 1, 1881, under which the sheriff sold the land on November 1, 1881, for $500, and made a certificate of sale wherein the party purchasing was described as "Russell & Company of Massillon, Ohio." This certificate was recorded the same day. The land was not redeemed from the sale. "Russell & Co." was then the partnership name of the plaintiffs in the judgment. Afterwards the members of the copartnership formed a corporation of the same name.

This action was commenced by Pinney to determine the adverse claim of the corporation to this vacant land. There was no allegation in the answer or proof on the trial that the partnership had ever conveyed this land or any of its property to the corporation. The issues were referred for trial to Gorham Powers, Esq., as Referee, and by his report filed November 6, 1891, he found that the J. W. Humphrey, one of the defendants against whom judgment was rendered in 1874, was not identified as the John W. Humphrey who received the patent for the land. The evidence on this point is stated in the opinion. The Referee also found that plaintiff owned the land, and that defendant had no title, estate, or interest therein. Defendant moved for a new trial, and being denied, appeals.

*Samuel Porter*, for appellant.

The names of the individuals comprising the partnership were given in the pleadings and judgment of 1874; and in the complaint it is stated that these individuals were partners in business under the firm name of Russell & Co., and the fact that the judgment was entitled and docketed in the partnership name only, did not render it invalid. *Brooks* v. *Ratcliff*, 11 Ired. 321; *Cohoon* v. *Morton*, 4 Jones, 256; *Davis* v. *Kline*, 76 Mo. 310; *McNamee* v. *Huffman*, 3 Harr. (Del.) 425; *Marshall* v. *Hill*, 8 Yerg. 101.

The practice of stating only the initial of the Christian name of a defendant has been strongly condemned by this court, and many

others, and it is undoubtedly very bad practice; still in this case there is no evidence that Pinney was a *bona fide* purchaser of this land. *Jones' Estate,* 27 Pa. St. 336.

The fact that John W. Humphrey was the owner of the land, and the fact that a judgment was docketed in the same county against J. W. Humphrey, were sufficient to place the searcher of the title on inquiry to ascertain who the judgment debtor was, and if sufficient for that purpose, the plaintiff is bound by all that inquiry would have divulged.

*J. F. Hilscher,* for respondent.

The plaintiff in this case was not chargeable with notice that "Russell & Co." held a judgment against John W. Humphrey, his remote grantor, or that J. W. Humphrey, one of the judgment debtors, was the same person as John W. Humphrey; nor do we think a judgment docketed against J. W. Humphrey would create such a lien on the land of John W. Humphrey as to defeat or affect the title to this land of one holding under mesne conveyances from John W. Humphrey, without actual notice that J. W. and John W. were the same person.

Entitling a case or docketing a judgment by the initials of the Christian name of the defendant or judgment debtor, will not be countenanced by the courts. *Knox* v. *Starks,* 4 Minn. 20, (Gil. 7;) *Gardner* v. *McClure,* 6 Minn. 250, (Gil. 167;) *Kenyon* v. *Semon,* 43 Minn. 180; *Sistermans* v. *Field,* 9 Gray, 331; *Johnson* v. *Hess,* 9 L. R. A. 471.

DICKINSON, J. This is an action under the statute to determine adverse claims to certain real estate in Chippewa county. The defendant is a corporation. Both parties claim to have acquired title from *John W. Humphrey,* who owned the land prior to 1877, when he executed a conveyance thereof, through which the plaintiff's asserted title is derived. The defendant's claim of title is through an execution sale on a judgment rendered and docketed against *J. W. Humphrey* and others in 1874, and shortly before John W. Humphrey acquired the title to this land.

The case was tried by a referee, whose decision in favor of the plaintiff was based in part on a finding that the J. W. Humphrey, one of the defendants against whom said judgment was rendered, was not identified as the John W. Humphrey who formerly owned the land. The correctness of this finding is called in question.

The evidence going to show the identity of those persons was as follows: A witness residing in Chippewa county testified that for 13 years he had known John W. Humphrey, who owned this land, and who resided in that county during a part of the time of such ownership; that he was the only J. W. Humphrey he had known in that part of the country, although he (the witness) was well acquainted there; that, during the period in which the summons in the action above referred to was served, Humphrey resided in Minneapolis; that in 1871 this Humphrey and one M. C. Fitch bought a threshing machine,—the only one they ever owned together,—called a "Massillon Machine;" and that the name "Russell" was "printed" on the side of it; and that an action was prosecuted on the obligation given for the machine. The roll of the judgment through the execution of which the defendant claims title, as above stated, was received in evidence, showing that the action had been prosecuted against J. W. Humphrey and M. C. Fitch and another by several persons of the name of Russell, stated in the complaint to be partners, doing business at Massillon, in the state of Ohio, under the name of Russell & Co.; that the action was upon several notes or contracts alleged to have been executed by these defendants, and which, as set out in full, purport on their face, to have been given in July, 1871, to Russell & Co. on the purchase of a "Massillon Thresher;" and that the summons was personally served on J. W. Humphrey, in the city of Minneapolis. The judgment was rendered on default of the defendants. There was nothing in the case to discredit the truthfulness of the witness. There was no opposing evidence, and none to show that the John W. Humphrey and J. W. Humphrey to whom the evidence refers were not the same person. A careful consideration of the testimony referred to, and a comparison of the various acts stated by the witness as to John W. Humphrey with the facts shown by the judgment roll as to J. W. Humphrey, show the proof

of their identity to be strong and convincing, and, being wholly unopposed by other proof, the finding of the referee cannot be sustained.

The too common practice of designating the parties in judicial proceedings and in conveyances by only the initials of their Christian names is reprehensible; liable to result in inconvenience, if not actual injury. But a record—as of a judgment against one whose Christian name is indicated only by initial letters—is, we think, effectual to put subsequent purchasers of lands, the title of which may be affected thereby, upon inquiry. See *Ames* v. *Lowry*, 30 Minn. 283, 287, (15 N. W. Rep. 247.) One about to purchase from John W. Humphrey land situate in a particular county could not make a proper examination of the record of the title without discovering the existence of any judgment which might have been docketed in that county against J. W. Humphrey. It would be at once apparent that the "J. W." were the initial letters of a Christian name; and common prudence would suggest the inquiry as to whether the person thus designated might not be "John W.;" hence the plaintiff, in purchasing this land, presumably had notice of the lien of the judgment.

The second branch of the case relates to the question whether, assuming that John W. and J. W. were the same person, the title of the plaintiff was not divested by execution sale under the judgment. However irregular the judgment and the execution sale may have been, it does not appear to be contended on the part of the plaintiff that either was void; but the point relied on seems to be that the execution sale was not made to this defendant, the corporation Russell & Co., but to the partnership of "Russell & Co.," and so the referee found the fact to be. It was hence considered that the plaintiff should be adjudged to be the owner of the land; but if the sale was effectually made to either the partnership or the corporation, so as to have conveyed the title, that fact being found would preclude a recovery by the plaintiff in this form of action. The land being vacant, the plaintiff was not entitled to judgment in his favor unless he established some estate or interest therein. *Jellison* v. *Halloran*, 40 Minn. 485, (42 N. W. Rep. 392,) and cases cited; *Wakefield* v. *Day*, 41 Minn. 344, (43 N. W. Rep. 71.)

Assuming that the judgment was against John W. Humphrey, the

former owner of the land, the further findings of the court would necessarily lead to the conclusion that the title was in neither the plaintiff nor the defendant.    In such a case the action should have been dismissed.

Order reversed.

(Opinion published 54 N. W. Rep. 484.)

