LENA LOSER, as Executrix of the Estate of LIPMAN LOSER, Deceased, Appellee, v. PLAINFIELD SAVINGS BANK, Appellant.

**Conveyance:** RECORD: NOTICE: *Bona fide* PURCHASER. An instrument
1 when properly recorded is notice not only of the facts and claims therein expressly set forth, but of all other material facts which an inquiry reasonably suggested thereby would develop; and such notice is not affected by a variation in names of the parties which will not or ought not to mislead a subsequent purchaser of ordinary prudence and intelligence.

**Same:** NAMES OF PERSONS: CHANGE OF NAME: USE OF DIFFERENT NAMES.
2 The name of a person is the designation by which he is usually known and called in the community in which he lives and is best known; and in the absence of statute a person may change his name or acquire a new one by general usage different from that given him in infancy; and where he is generally known by different names the use of either for most purposes is sufficient.

**Same:** NAMES: USE OF INITIALS. Formerly the law recognized but
3 two names of an individual, one christian name, usually the first, if he had more than one, and his surname, disregarding his middle name or initial; but the courts in the execution of formal documents have now come to recognize christian names by initial only, or the use of either of two christian names by which the person is familiarly known.

**Conveyances:** IDENTITY OF NAMES: CONSTRUCTIVE NOTICE. In the in-
4 stant case the mortgagor inherited the property in question by the name of J. W. McGregor. The record disclosed a mortgage by William McGregor and a subsequent mortgage by J. W. Mc-Gregor, and it is held that the subsequent mortgagee was not relieved by the discrepancy in names from further investigating the record regarding the identity of the mortgagor; especially as the record disclosed that the same property had been mortgaged in both instances.

*Appeal from Chickasaw District Court.*—HON. A. N. HOBSON, Judge.

SATURDAY, DECEMBER 17, 1910.

ACTION in equity to foreclose two certain mortgages executed by William McGregor and Jenny McGregor, his wife, to Lipman Loser. There was a decree as prayed and the Plainfield Savings Bank claiming a superior lien on the mortgaged land appeals.—*Affirmed.*

. *Dawson & Wehrman,* for appellant.

*Springer, Clary, Condon & Yarger,* and *Sager & Sweet,* for appellee.

WEAVER, J.—A brief statement of admitted facts will make plain the nature of the case presented. One Mc-Gregor for a long time resident of the county became the owner by inheritance from his father of an undivided interest in land. Soon thereafter he executed and delivered two certain mortgages upon the property to Lipman Loser. One year later he executed and delivered two other mort-gages thereon to the Plainfield Savings Bank. Each of said instruments was duly recorded very soon after its exe-cution. No objection is raised to the sufficiency of the con-sideration for either mortgage or to its validity as against McGregor and the only controversy between the holders of the respective liens is upon the order of their priority. The occasion for that dispute .arises as follows: The mortgages to Loser which are first in the order of time and record were signed and acknowledged by the mortgagor as "Wil-liam McGregor" while the mortgages to the savings bank were signed and acknowledged by the same mortgagor as "J. W. McGregor." Lipman Loser having since died and McGregor having left the state the executrix of Loser's will instituted this proceeding in' equity to foreclose the two mortgages first mentioned making the Plainfield Sav-ings Bank a party defendant. The bank contests the

priority of the Loser liens alleging that the true name of the mortgagor was J. W. McGregor; that the record of mortgages made by "William McGregor" did not operate to give constructive notice of said liens to appellant with whom he subsequently dealt under his true name; and that the mortgages made by him as "J. W. McGregor" were taken and accepted by the bank without notice actual or constructive of the liens now so sought to be foreclosed. The trial court held with the plaintiff, established the priority of her claim, and the bank appeals.

The evidence offered upon the trial tended to establish the following facts: The mortgagor was the son of one John and Mary McGregor who gave to their son the name James William. In the family record it was written "James William McGregor" or "J. W. McGregor." The record itself is not in evidence, and the only member of the family testifying as a witness on the trial appears to be somewhat confused in his statements respecting it. Indeed, it would appear that he himself never knew his brother by any other name than William, and that his first knowledge of the use of any other name for him was acquired after the inception of the controversy now before us. It is shown beyond all reasonable question that as boy and man the mortgagor was known to all his family, friends, and neighbors as William McGregor or "Will McGregor." Most of the witnesses outside of the family who had known him for a long time appear never to have heard him addressed or spoken of as J. W. McGregor or James W. McGregor. Generally this continued to be the situation after he left the family home and entered upon business for himself in other parts of the county, but it does appear, especially in later years, that in the more formal matters of business he frequently wrote his name "J. W. McGregor." For instance, his bank account with appellant was kept in that name, and his checks were so subscribed. The postmaster at the small village where he

was the proprietor of a blacksmith shop testifying for the appellant says that at this time (which was about the date of the appellant's mortgages) he was generally known and called Will or William McGregor, but that letters of a business character were addressed to him as J. W. McGregor. The father John McGregor (from whom the son's title was derived), died in November, 1901, when the mortgagor was about thirty-one years of age. The administrator's list of heirs of the deceased filed as required by the statute gives the name of the son as J. W. McGregor, and later, on the day following the execution of the first of the mortgages given to the appellant, McGregor became plaintiff by that name in proceedings for partition of the lands left by his father. It should further be said that in each of the mortgages given to Loser the mortgagors are described as "William McGregor and Jennie McGregor, husband and wife, heirs at law of John and Mary McGregor," and in the mortgages to the appellant bank they are somewhat similarly identified as "J. W. McGregor and Jennie McGregor, husband and wife, sole heirs at law to an undivided one-eighth interest of the estate of Mary and John McGregor." The county recorder indexed the mortgages to Loser in the name of William McGregor and wife as grantors. The first mortgage to appellant is indexed in the name of J. W. McGregor and wife, but in the index of the record of the second mortgage the grantors were described as "John McGregor, by heirs of." All the mortgages described the property covered as the one-eighth part of the land described, and such description was noted in the index of the record. The trial court filed a brief finding of facts substantially as we have stated them, and an expression of its opinion that an examination into the estate of John McGregor and into the descent of his property such as was reasonably suggested by the mortgages would have inevitably revealed the prior liens, and that

appellant is therefore not in position to deny constructive notice thereof.

The effect of a variation in the names of parties upon the constructive notice imparted by a record which is relied upon for the establishment of a lien or as a link in a chain of title is a matter over which there has arisen no little litigation, and the precedents thereon are not in all respects harmonious. It may, however, be taken as well settled that an instrument properly made of record is notice to the world not only of the facts and claims therein expressly set forth, but also of all other material facts which an inquiry thereby reasonably suggested would have developed, and that such notice is not affected or avoided by variations in names which do not mislead a subsequent purchaser or are of such character as ought not to mislead a purchaser of ordinary prudence and intelligence. *State v. Shaw,* 28 Iowa, 71; *Thomas v. Kennedy,* 24 Iowa, 397; *Jones v. Berkshire,* 15 Iowa, 248; *Mosle v. Kuhlman,* 40 Iowa, 108; *Insurance Co. v. Bishop,* 69 Iowa, 645; *Paxton v. Ross,* 89 Iowa, 663. "A purchaser is charged with notice of every fact shown by the records, and is presumed to know every other fact which examination suggested by the record would have disclosed." *Bank v. Freeman,* 171 U. S. 629 (19 Sup. Ct. 39, 43 L. Ed. 307); *Pinney v. Russell,* 52 Minn. 443 (54 N. W. 484). "Whatever is sufficient to put a purchaser on a chain of inquiry is sufficient to charge him with whatever an ordinary diligent search would have disclosed." *Mettarly v. Allen,* 139 Ind. 644 (39 N. E. 239).

1. CONVEYANCES: record: notice: bona fide purchasers.

In discussing the effect of apparent discrepancies in the names of persons found in the paper or record chain of title, it is well first to inquire what is meant in this connection by the word "name" as applied to a person. It is perhaps a sufficient answer for present purposes to say that the name of any given

2. NAMES OF PERSONS: change of name: use of different names.

individual is the word or combination of words by which he is distinguished from other individuals. It is the label or appellation which he bears for the convenience of the world at large in addressing him or in speaking of him or in dealing with him. According to the customs of English speaking people each person bears a family name which is continued from parent to child, and to which is prefixed one or more other words constituting his more specifically personal appellation and distinguishing him from others of the same family appellation. The former is spoken of as the surname and the latter as the given name or Christian name, and is ordinarily selected for him in infancy by his parents. But, contrary to the apparent thought suggested in argument in this case, there is no such thing as a "legal name" of an individual in the sense that he may not lawfully adopt or acquire another, and lawfully do business under the substituted appellation. In the absence of any restrictive statute, it is the common-law right of a person to change his name, or he may by general usage or habit acquire a name notwithstanding it differs from the one given him in infancy. *Brayton v. Beall,* 73 S. C. 308 (53 S. E. 641). A man's name for all practical and legal purposes is the name by which he is known and called in the community where he lives and is best known. To use the language of the Pennsylvania court, "A man's name is the designation by which he is distinctively known in the community." *Laflin v. Steytler,* 146 Pa. 434 (23 Atl. 215, 14 L. R. A. 690); *Miller v. George,* 30 S. C. 526 (9 S. E. 659). He may be as well known by one name as by another, and in such case the use of either is for most purposes sufficient. *Gillespie v. Rogers,* 146 Mass. 612 (16 N. E. 711); *Brayton v. Beall,* 73 S. C. 308 (53 S. E. 641).

It was an ancient rule that the law would recognize but two names of an individual, the surname and one given name, and that anything more would be disregarded as of no

material significance. Generally the first name was the one recognized, and a middle name or its initial was treated as a negligible incident. This arose no doubt from the fact that originally very few persons were ornamented with more than a single Christian name and possibly to a greater extent from the fact that the person was ordinarily spoken of or addressed by his first name alone. In those days, moreover, it was the universal as well as sensible practice for each person when called upon to subscribe to a formal writing to write out his given name in full or if he had two or more such names to write out the first one (which as we have seen was the one by which he was known to his neighbors) and indicate his second or less used name by initial letter only. Under such conditions a signature so written accomplished the end which the law with reference to names has in view, the identification of the signer to a reasonable certainty.

3. SAME: names: use of initials.

Relying upon this common-law rule of doctrine to which we here refer, the appellant argues that while the mortgagor had been given the middle name "William," yet for the purpose of legal identification his name was "James," and that to give notice to subsequent purchasers his deed or mortgage should be executed and recorded in the name "James" or its initial "J." and the presence or absence of the name "William" or its initial "W." in the signature or record is immaterial. If this position is sound, it follows of course that the record of a mortgage made by William McGregor gave the world no notice of a lien thereby created upon the land of James (or J.) McGregor. But the proposition is stated much too narrowly. It is true that courts still quite frequently cite and follow the rule which disregards the middle initial or middle name, but conditions have materially changed since it first obtained recognition, and there is a marked tendency to restrict its application in a manner to avoid the unjust and often absurd results which its literal and universal en-

forcement would bring about. It is to be regretted per-
haps, but the fact remains, that in the execution of formal
documents the average person of today is as apt to indicate
his given name by initials only as to write it out in full,
and so general is the practice that courts have been com-
pelled to recognize it. *Cummings v. Rice,* 9 Tex. 529;
*State v. Van Auken,* 98 Iowa, 674. Moreover, the average
person is no longer started in life with a single given name,
but usually with two or more. In familiar address he is
ordinarily called by one only, and if he writes either of
his Christian names in full, it is the one by which he
is best known. This familiar name may be, and perhaps
more often is, the first, but it is not so universally the
case that the habitual and common use of the second name
may be ignored. He who is christened "James Monroe"
or "John Wesley" or "Benjamin Franklin" may be known
to his friends, acquaintances, and the community in which
he lives simply as "Monroe" or "Wesley" or "Franklin,"
and, where this appears to be the fact, a ruling by the
court that such appellation is no part of his name, and
that when, following the modern practice, he signs his
name "J. M. Blank" or "J. W. Blank" or "B. F. Blank,"
we must disregard the middle initial and look only to the
first, and that if the record of such name puts an investiga-
tor upon inquiry, it is only as to the one name represented
by the first initial, would be to sacrifice common sense to
the letter of a rule which has but slight adaptation to social
and business conditions of the present day, and has been
as we have already remarked greatly restricted in its ap-
plication by the courts in general.

In the case before us the record of the estate of John
McGregor included a list of heirs which
contained one bearing the initials "J. W."
and while it is not impossible that a name
should consist of a single letter instead of a
word, we know as a matter of common observation that such

4. CONVEYANCES:
identity of
names:
constructive
notice.

instances are extremely rare, and where a name is indicated by a letter only, it is the first or initial letter of a name not fully expressed. If, then, appellant or any other person is tendered a title by an alleged heir of an estate, the first question would be one of identity, not simply an identity of initial, but identity of the person of the alleged heir with some person named as such in the proper record, and, next, to ascertain whether he has already parted with or incumbered such title. In the listed name "J. W. McGregor," the initial may stand for James William, John Wesley, Joseph West, or any other of the infinite variety of names beginning with the same letters. The natural if not inevitable thing upon the lips of an ordinary cautious man about to examine the record for possible deeds or mortgages executed by a person who indicated his given name by initials only would be the question, "For what name do these initials stand?" If the answer be "James William McGregor," the examiner would not pass as of no moment any conveyance or incumbrance by any McGregor whose given name purports to be "James," or "William," or "James W." or "J. William." Certainly not if the record shows that a person so named has assumed to put a mortgage upon the very property under consideration. Whether in the case of an alleged judgment lien, which is a creature of statute and not of contract, the same reasoning would be held equally applicable we need not here discuss. But see *Thomas v. Desney,* 57 Iowa, 58; *Insurance Co. v. Hesser,* 77 Iowa, 381.

Nor does the case necessarily bear the aspect which it would present if the mortgagor had executed the instrument as "James" McGregor, and his name had been listed in the probate records in the same form. Neither is it equivalent to a case where a deed of conveyance indicates the Christian name of the grantee by initials only, and he thereafter conveys it by deed in which he adopts the same style of signature, for, where the record shows the name

of a grantor to be in the exact form of the name of a grantee to whom the land has formerly been conveyed, there is room for some presumption that such former grantee and present grantor are one and the same person. McGregor did not take his title through the administrator, but became vested therewith immediately upon the death of the ancestor, and it can not be said as a matter of law that he acquired it by the name of J. W. McGregor any more than he acquired it as William McGregor. It may be said, perhaps, that he acquired the title by his true name, but the question as to what in fact was his true name is not necessarily concluded by reference to the administrator's list or to this family record.

As indicating the trend of the authorities on the subject treated in this opinion, we call attention to the following precedents; some which we cite from other states go further than this court has gone, and some of them further than we are yet prepared to follow, but they illustrate the extent to which the common-law rule has been modified in more recent years. Among our own cases we may note *Huston v. Seeley*, 27 Iowa, 183, in which property owned by Almira J. Stringham was conveyed in trust by her as J. A. Stringham and this instrument was indexed upon the records in the name of "J. A. Stringham" as grantor. Later, she mortgaged it as "Almira J. Stringham." The claimants under the mortgage sought to be preferred to the trust deed on the ground that the record of the latter did not operate to give constructive notice to subsequent mortgagees dealing with Mrs. Stringham as "Almira J." It was shown that she was in the habit of writing her given name variously, "Almira J.," "Jane A.,, and "J. A.," and that she was commonly called "Jane." Upon this showing it was held that the index was sufficient to direct a searcher's attention to the record from which sufficient facts would have been disclosed "to lead a prudent examiner to a knowledge of the deed of trust, and to affect a sub-

sequent purchaser with notice." In *Jones v. Berkshire*, 15 Iowa, 248, a mortgage made by the owner, W. T. Berkshire, was indexed in the name of "W. H. Berkshire," the latter initials being those of the mortgagor's husband, and it was held the index was sufficient to put a subsequent purchaser upon inquiry, and that due inquiry would have revealed the facts. See, also, *Thornily v. Prentice*, 121 Iowa, 89; *Fanning v. Krapfi*, 61 Iowa, 417.

Turning to other jurisdictions, we cite *Jenny v. Zehnder*, 101 Pa. 296, as quite in point. There, land stood in the name of "John Jacob Frederick Zehnder." When spoken of by his first name he was generally called "Fred." He generally signed his name "Frederick" or "Fr.," but in executing legal documents he was in the habit of writing out his name in full or at times "J. J. Zehnder." When he transferred the title there was a judgment indexed on the records of the county against "F. Zehnder," and this, under the circumstances related, was held sufficient to give the purchaser constructive notice of the lien. In Massachusetts it is held that, if a deed or mortgage be valid as between grantor and grantee, its entry of record is constructive notice thereof to the world. *Gillespie v. Rogers*, 146 Mass. 610 (16 N. E. 711); *Ouimet v. Sirois*, 124 Mass. 162. In Minnesota, a record of judgment against "J. W. Humphrey" is sufficient to put on inquiry a purchaser from "John W. Humphrey." *Pinney v. Russell*, 52 Minn. 443 (54 N. W. 484). The omission of the Christian name altogether does not necessarily negative constructive notice. *Hibberd v. Smith*, 50 Cal. 511. In *Braylon v. Beall*, 73 S. C. 308 (53 S. E. 641), decided by the South Carolina court, one McKenzie was equally well known in his community by the given names "R. C." and "W. A.," though the latter seems to have been the one given him in infancy. He mortgaged certain property under the name "R. C. McKenzie," and subsequently gave another mortgage thereon to another person under the name

"W. A. McKenzie," and the court held that the record of the first instrument was sufficient to put the second mortgagee upon inquiry. In *Fallon v. Kehoe,* 38 Cal. 44 (99 Am. Dec. 347), one Jeremiah Fallon was sometimes known and called by the nickname "Darby O'Fallon." Under the latter name he received the grant or conveyance of a town lot. Later he sold and conveyed the lot by his formal or true name "Jeremiah Fallon," and thereafter made another deed to the same lot in the name of "Darby O'Fallon" to another grantee. Upon this showing it was held that the record of the grantor's first conveyance was sufficient to charge the subsequent purchaser with notice. A Nebraska case goes to the perhaps doubtful extreme of holding that the record of a mortgage made under a fictitious name for the purpose of defrauding the mortgagee (who was seller of the mortgaged property) is sufficient to give such mortgagee priority over one who claims under a second mortgage made under mortgagor's true name. *Alexander v. Graves,* 25 Neb. 453 ( 41 N. W. 290, 13 Am. St. Rep. 501). For other illustrative cases, see *Hommel v. Devinney,* 39 Mich. 522; *Glenovich v. Zurich,* 19 S. D. 37 (101 N. W. 1103); *O'Connor v. Cavan,* 126 Mass. 117; *McPherson v. Rollins,* 107 N. Y. 316 (14 N. E. 411, 1 Am. St. Rep. 826); *Work v. Darby,* 13 Pa. Co. Ct. R. 269.

Under the law of this state the index of a mortgage record is required to show the name of the mortgagor, name of mortgagee, the book and page of the record, and the description of the land or lot covered by the lien. The appellee's mortgage was thus indexed. A single glance at this entry was sufficient to disclose, not merely the name under which the paper was executed, but the description of the land in substantially the same form of words in which it is described in appellant's mortgage. Such an index gives to the investigator of a title a double check or protection against prior liens—one by tracing the succession of grantors and grantees, mortgagors and mortgagees

by name; and another by the description of the property which appears to have been conveyed or mortgaged. If in such search he finds an entry indicating that some one has attempted to sell or mortgage the same property in which he is about to invest his money, and especially if the name of the grantor or mortgagor so disclosed be such as to suggest any reasonable possibility of his identity with the person who is tendering another conveyance or mortgage of said property, it is putting it very mildly to say that, as a reasonably prudent man, the investigator will be put upon inquiry and held to have had notice of every fact which that inquiry pursued with reasonable diligence would have brought to his attention. This is the principle which was held to govern in the case of *Huston v. Seely, supra,* and it is equally applicable to the case at bar.

We have thus far given no consideration to the inquiry whether the decree below may not be sustained upon the theory of actual notice to the appellant of the appellee's prior mortgage or at least of actual notice that the mortgagor was generally if not universally known as "William McGregor." We shall not go into any discussion of the record on this question further than to say that, if appellant or its officers had anything more than a casual acquaintance with McGregor, it is scarcely possible that they should not have known that he was usually addressed and spoken of as "William" or "Will" McGregor, and if their acquaintance with him was but slight, the reason for inquiry into his identity, his name and his right in the property, was proportionately emphasized.

The decree of the district court is *affirmed.*