## HAUSER v. CALLAWAY.

Circuit Court of Appeals, Eighth Circuit.
November 29, 1929.

No. 8451.

W. H. Soper, of Eldora, Iowa (Dean W. Peisen, of Eldora, Iowa, on the brief), for appellant.

E. J. Ryan, of Eldora, Iowa, for appellee.

Before BOOTH, Circuit Judge, and SANBORN and DEWEY, District Judges.

SANBORN, District Judge. The bankrupt filed his voluntary petition on December 23, 1927. On April 21, 1927, he executed a chattel mortgage to his father, the appellee, to secure certain indebtedness. It was signed "Chester C. Callaway," and filed for record in the office of the county recorder of Grundy county, Iowa, and indexed as follows:

| Number | Date filed | Mortgagor | Mortgagee |
|---|---|---|---|
| 957 | Apr. 22, 1927 9:00 A. M. | . Callaway Chester C. | S. H. Callaway |

| Date of Instrument | Amount Secured | Nature of Property Mortgaged | Location |
|---|---|---|---|
| Apr. 21, 1927 | 2900.00 | Livestock, Mach., etc. | S½ 2—86—18 |

If the filing and recording of this mortgage was not constructive notice to the trustee, the appellee's position in the bankruptcy proceeding was that of a general creditor. Pick & Co. v. Wilson (C. C. A.) 19 F.(2d) 18.

The trustee attacked the mortgage on the following grounds, so far as we are here concerned:

1. That it was not constructive notice,
   (a) Because the acknowledgment was defective;
   (b) Because the bankrupt's true name was Charles Chester Callaway.

2. That there existed between the bankrupt and his father a conspiracy to defraud creditors.

The referee in bankruptcy held that the acknowledgment was sufficient, but that the mortgage was not notice because the name "Chester C. Callaway" had been used in its execution. The referee found against the trustee on the question of conspiracy, and entered an order permitting S. H. Callaway to file as a general creditor.

The appellee petitioned for a review of the order of the referee. The referee first certified to the court only the question of the sufficiency of the record of the mortgage as notice, but subsequently, on request of the trustee, certified the other questions which had been decided adversely to him.

The court below considered only one question, and reversed the referee, holding:

"That the record and filing of the chattel mortgage in question was sufficient to charge third parties with constructive notice of such mortgage, and that upon the authority of Loser v. Savings Bank, 149 Iowa, 672, 128 N. W. 1101, 31 L. R. A. (N. S.) 1112, the order of the referee is reversed, and the matter remanded to the referee to proceed in accordance therewith."

From this order, the trustee appeals.

It is claimed by the appellant that we must pass upon the question of the existence of a conspiracy, as well as the question of constructive notice. The appellee contends that that question is not before us. Assuming, without deciding, that we have power to pass upon that question, we think the referee was not compelled, under the evidence, to find that the conspiracy charged existed. He did not so find, and there is no reason to disturb his conclusion in that regard.

The Code of Iowa, 1927, § 10106 (Code of Iowa, 1924, § 10106), requires that a mortgage must be acknowledged as provided by law, to be entitled to record. Section 10094, Code of Iowa, 1927 (section 10094, Code of Iowa, 1924), provides that the notary public in the acknowledgment shall show, with reference to the person executing the instrument, "that such person acknowledged the execution of the instrument to be his voluntary act and deed."

The acknowledgment to the chattel mortgage in question here reads as follows:

"State of Iowa, Hardin County—ss.

"Be it remembered that on this 21st day of April, A. D. 1927, before me the undersigned, a Notary Public in and for said County and State, personally appeared Chester C. Callaway, to me personally known to be the mortgagor named in the foregoing mortgage, and who executed the said instrument, and acknowledged said instrument to be his voluntary act and deed.

"Witness my hand and seal at Eldora, Iowa, the day and year last above written.
"[Notarial Seal.]      W. H. Lundy, Notary Public."

■ The trustee contends that the language used in this acknowledgment is not in strict compliance with the statutory requirement; that the notary, in effect, states that the instrument, and not the execution of the instrument, was the free act and deed of the mortgagor. Lee County Savings Bank v. Snodgrass, 182 Iowa, 1387, 166 N. W. 680, is cited as an authority. In that case it was held that the acknowledgment there under consideration was not in strict compliance with the statute. While the opinion does not set out the language of the acknowledgment, it is apparently conceded that the record in that case shows that the notary in his certificate made this statement: "To me known to be the identical person whose name is affixed to the foregoing instrument as grantor, and acknowledged the same to be his free act and deed." With all due respect to this decision, which contains nothing in regard to the acknowledgment but the statement that it was not in strict compliance with the statute (section 10094, supra), to say that the meaning of the words used by the notary in the acknowledgment of the Callaway mortgage is not the full equivalent of certifying that Callaway acknowledged the execution of the instrument to be his free act and deed is mere quibbling. Since the Supreme Court of Iowa has not held that the exact language used in the acknowledgment in question here is not a strict compliance with the statute, and since the Iowa statutes prescribe no exact form of language which must be used by notaries in their acknowledgments, and since the language used is the equivalent of that required by the statute, we hold the acknowledgment was sufficient to entitle the chattel mortgage to record.

■ "In the absence of an express requirement to that effect, the exact language of the statute need not be used, and it is enough if the necessary facts be expressed in words of substantially equivalent import." 1 C. J. 843.

"It is against the spirit and genius of our government to extend nice technical objections to the acts of magistrates and other functionaries of the law, who are called periodically, from the mass of the people, to discharge such duties, without previous legal learning or experience, and thereby disturb estates long settled and purchased for full value, and thus revest the estate in the hands of the original vendor by a legal quirk." Rigler v. Cloud, 14 Pa. 361, 364.

See also Schley v. Pullman's Palace Car Co., 120 U. S. 575, 7 S. Ct. 730, 30 L. Ed. 789; Kelly v. Calhoun, 95 U. S. 710, 713, 24 L. Ed. 544, in which the court said: "Instruments like this should be construed, if it can be reasonably done, ut res magis valeat quam pereat. It should be the aim of courts, in cases like this, to preserve and not to destroy." Deery v. Cray, 5 Wall. (72 U. S.) 795, 18 L. Ed. 653; Dundas v. Hitchcock, 12 How. (53 U. S.) 256, 13 L. Ed. 978; Berry v. N. W. & P. H. Bank (C. C. A.) 93 F.

44; McCormack v. James (D. C.) 36 F. 14; Bell v. Evans, 10 Iowa, 353; Cavender v. Heirs of Smith, 5 Iowa, 157; Wickersham v. Reeves & Miller, 1 Iowa, 413.

In Hughes v. Powers, 99 Tenn. 480, 42 S. W. 1, 2, it was held that when in an acknowledgment to a deed the words "who acknowledged his signature to the annexed deed for all the purposes therein expressed" were substituted for the statutory words "who acknowledged that he executed the within instrument for the purpose therein contained," the deed was sufficiently authenticated for registration, as the two phrases are equivalent in meaning.

Taking up the question of the name used in the mortgage, as shown by the index: The name "Charles Chester Callaway" was given to the bankrupt by his parents shortly after his birth. To distinguish him from an uncle, Charles W. Callaway, who lived in the same household, he was called "Chester." During his entire life he has been known in the community where he was born and has lived, by his family, friends, neighbors, and apparently by his creditors as well, as Chester, Chester C., Chet, or C. C. Callaway. On written documents he generally signed as "Chester Callaway" or "Chester C. Callaway." Only upon his induction into the army and in signing his petition in bankruptcy did he use the name "Charles Chester Callaway." His uncle, who still lives near by, is known as Charles or Charles W. Callaway. All creditors in the bankruptcy proceeding referred to the bankrupt as "Chester Callaway" or "Chester C. Callaway." For five years or more before bankruptcy, he lived on the half section of land upon which the chattels covered by the mortgage are stated to be situate. At the time the petition in bankruptcy was filed, there was pending in the state court of Grundy county a receivership proceeding brought by one of his creditors against the bankrupt, in which he was named as "Chester Callaway." This proceeding involved the property covered by this same chattel mortgage.

Had the bankrupt signed the petition in bankruptcy as "Chester C. Callaway," as he might well have done, this question would not have been before us. The law with respect to it, however, has been settled by the Supreme Court of Iowa, in the decision referred to by the lower court, Loser v. Plainfield Savings Bank, 149 Iowa, 672, 128 N. W. 1101, 1103, 31 L. R. A. (N. S.) 1112. The facts in that case show that a man, whose surname was McGregor, gave two mortgages upon certain real estate to Loser. A year later he gave two other mortgages to the Plainfield Savings Bank. All of the instruments were duly recorded shortly after their execution. The mortgages to Loser were signed and acknowledged as "William McGregor," while the mortgages to the savings bank were signed and acknowledged as "J. W. McGregor." The evidence showed that the mortgagor had been given by his parents the name "James William." He was known to his family, friends, and neighbors as William McGregor or "Will McGregor." It appeared that in later years, in more formal matters of business, he frequently wrote his name "J. W. McGregor." His bank account was carried in that name. The postmaster of the village where he lived said that he was generally known and called "Will" or "William," but that letters of a business character were addressed to him as "J. W." In the administration of his father's estate the list of heirs referred to him as "J. W. McGregor." The county recorder indexed the mortgages to Loser in the name of William McGregor and wife as grantors. The bank contested the priority of the Loser mortgages because of the name. The Supreme Court of Iowa said, in discussing the law:

"It may, however, be taken as well settled that an instrument properly made of record is notice to the world not only of the facts and claims therein expressly set forth, but also of all other material facts which an inquiry thereby reasonably suggested would have developed, and that such notice is not affected or avoided by variations in names which do not mislead a subsequent purchaser or are of such character as ought not to mislead a purchaser of ordinary prudence and intelligence."

Also:

"In the absence of any restrictive statute, it is the common-law right of a person to change his name, or he may by general usage or habit acquire a name notwithstanding it differs from the one given him in infancy. Brayton v. Beall, 73 S. C. 308, 53 S. E. 641. A man's name for all practical and legal purposes is the name by which he is known and called in the community where he lives and is best known. To use the language of the Pennsylvania court, 'A man's name is the designation by which he is distinctively known in the community.' Laflin v. Steytler, 146 Pa. 434, 23 A. 215, 14 L. R. A. 690; Miller v. George, 30 S. C. 526, 9 S. E. 659. He may be as well known by one name as by another, and in such case the use of either

is for most purposes sufficient. Gillespie v. Rogers, 146 Mass. 612, 16 N. E. 711; Brayton v. Beall, 73 S. C. 308, 53 S. E. 641."

 The bankrupt was "Chester C. Callaway" or "Chester Callaway" to all who knew him. The record of a mortgage given in the name by which he was known was the best constructive notice which could be given of its existence. The fact that the petition in bankruptcy was signed "Charles Chester Callaway," a name by which he was not generally known, could not deprive the record of the mortgage of its effectiveness as notice.

The order appealed from is affirmed.