WILLIAM J. MAXWELL, APPELLANT, V. STEPHEN H. HIGGINS ET AL., APPELLEES.

FILED JANUARY 3, 1894. No. 5149.

1. **The record of a deed** is not admissible in evidence unless the certificate of acknowledgment is substantially in accordance with the statute.

2. **Pleading.** Facts pleaded in a petition will be taken as admitted where not specifically denied in the answer, and the answer avers as to such facts that the defendants, for want of knowledge, neither admit nor deny the averments of the petition.

3. **Tenancy in Common.** A conveyance to two or more persons not acting in a fiduciary capacity will be presumed to create a tenancy in common, and not a joint tenancy.

4. **Adverse Possession.** Where one has been in possession of land, claiming ownership, and permits the land to be sold for taxes, and the grantee in the tax deed, although it was void on its face, enters into possession and remains in possession for a period of more than a year, such possession interrupts that of the prior occupant.

5. **Estoppel.** Where a claimant of land acts under a power of attorney from an adverse claimant, and as such attorney leases the land in the name of the adverse claimant, he and his grantees

are by such acts estopped from asserting that the possession of the tenant inured to him and not to the adverse claimant.

6. **Action Quia Timet.** One cannot in the same action to quiet title assert against one defendant that conveyances to such defendant were adverse to plaintiff's title and a cloud thereon, and ask that they be canceled, and against another defendant assert that the possession of the first defendant was in subordination to plaintiff's title and a link in the establishment of adverse possession.

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

The opinion contains a statement of the case.

*Cornish & Robertson* and *James F. Morton,* for appellant:

Where one of two tenants in common conveys the entire estate by warranty deed to a purchaser, and the purchaser enters into possession under such deed and receives the rents and pays the taxes, his possession is construed as coextensive with the estate conveyed by the deed, and becomes adverse to his co-tenant from the moment of entry. (*Unger v. Mooney,* 63 Cal., 586; *Culler v. Motzer,* 13 S. & R. [Pa.], 356; Buswell, Limitations and Adverse Possession, secs. 299–301, and notes; Sedgwick & Wait, Trial of Title to Land, sec. 287, and cases cited.)

Ellen McKelligon, being a mortgagee, is conclusively presumed in law to have purchased the tax title, or redeemed, as the case may be, to protect her security, and her possession is presumed to be subordinate and not adverse to the title of her mortgagor. (*McKeighan v. Hopkins,* 19 Neb., 38; *Comstock v. Michael,* 17 Neb., 300; *Young v. Brand,* 15 Neb., 604; *Hall v. Westcott,* 5 Atl. Rep. [R. I.], 629; *McLaughlin v. Green,* 48 Miss., 175; *Woodbury v. Swan,* 59 N. H., 22; *Christy v. Fisher,* 58 Cal., 256; *Moore v. Titman,* 44 Ill., 367; *Connecticut Mutual Life Ins. Co. v. Bulte,* 45 Mich., 113; *Martin v. Swofford,* 59 Miss., 328; *Fisk v. Brunette,* 30 Wis., 102; *Chickering v. Failes,* 26

Ill., 507; *Brown v. Simons*, 44 N. H., 475; *Schenck v. Kelley*, 88 Ind., 444; *Fair v. Brown*, 40 Ia., 209; *Middleton Savings Bank v. Bacharach*, 46 Conn., 513; *Whitney v. Gunderson*, 31 Wis., 359; *Moss v. Shear*, 25 Cal., 38; *McPherson v. Hayward*, 17 Atl. Rep. [Me.], 164.)

Ellen McKelligon redeemed from the tax sale October 22, 1879. Jolliffe, Price, and Sayer filed a motion asking leave to intervene in this action January 18, 1890. Between said dates the land was in possession of parties recognized and held in subordination to the title of plaintiff and his grantors. The date prior to which plaintiff must show ten years' adverse possession is the date of bringing the new parties into court. (*Jeffers v. Cook*, 58 Cal., 148; *Shaw v. Cook*, 78 N. Y., 196; *Miller v. McIntyre*, 6 Pet. [U. S.], 61; *Dudley v. Price*, 10 B. Mon. [Ky.], 84; *Corder v. Dolin*, 4 Bax. [Tenn.], 240; *Augusta Mfg. Co. v. Vertrees*, 4 Lea [Tenn.], 83; *Lagow v. Neilson*, 10 Ind., 183, *Thomas v. Fame Ins. Co.*, 108 Ill., 92; *Atkinson v. Amador & Sacramento Canal Co.*, 53 Cal., 102; *Brown v. Goalsby*, 34 Miss., 437; *Sweet v. Jeffries*, 67 Mo., 420.)

*A. S. Churchill, contra.*

Irvine, C.

This was a suit to quiet title to block 21, West Omaha. It was originally begun by Maxwell against Stephen Hewitt Higgins, Maurice J. McKelligon, the unknown heirs of Ellen McKelligon, the unknown heirs of Mehitable Higgins, and the unknown heirs of M. Swinny. The original petition alleged title in the plaintiff as follows: That on January 9, 1867, Stephen Hewitt Higgins and Mehitable Higgins became joint owners of the land; that during 1867 Mehitable Higgins died intestate; that on January 27, 1870, Stephen Hewitt Higgins conveyed to Maurice J. McKelligon, and on February 11, 1887, McKelligon conveyed to plaintiff; that from 1870, until the conveyance to plaintiff,

47

McKelligon remained in the continuous and uninterrupted possession of the land; that since the conveyance to plaintiff, plaintiff had remained in peaceful and quiet possession thereof. The petition further alleged that on March 4, 1878, the treasurer of Douglas county executed a deed to M. Swinny for the taxes of 1874; that the tax deed was void for certain reasons set out in the petition; that Swinny died intestate, and that certain persons claiming to be her heirs conveyed by a series of conveyances to Ellen McKelligon; that Ellen McKelligon died testate, by her will attempting to devise to the children of Maurice Mc-Kelligon. The petition prayed that the tax deed, and other deeds made in pursuance thereof, be declared void.

Upon January 18, 1890, a motion was made by Laura Jolliffe, Samuel S. Price, Jr., and Edward Sayre, asking that they be made parties defendant. No order seems to have been made upon this motion, but upon February 15, 1890, an order was made granting the plaintiff leave to file a supplemental petition making these persons defendants. This supplemental petition alleged, in brief, that Price, Sayre, Laura Jolliffe, Sarah A. Selden, and Mehitable Higgins had conspired to cast a cloud upon plaintiff's title, and in pursuance of that conspiracy a deed had been made by Sarah A. Selden to Mehitable Higgins of an undivided one-half of the property, and that thereafter certain other deeds were executed, set forth in particular, whereby it was attempted to convey this interest to Price, Sayre, and Jolliffe. It is further alleged that all of Sarah Selden's title had been conveyed to Mehitable Higgins and Stephen Hewitt Higgins January 9, 1867, but the deed of conveyance was defective in acknowledgment, through a clerical error, only; that Mehitable Higgins never had any equitable title, but that Stephen Hewitt Higgins paid all the purchase money for the property, and that the subsequent deeds to the new defendants were made without consideration and with notice of the facts. The supplemental petition also

averred peaceable, continuous, open, notorious possession in plaintiff and his grantor from May 17, 1869, and prayed for an annulment of the deeds from Sarah Selden, Mehitable Higgins, and subsequent deeds in that chain of title.

The new defendants, Price, Sayre and Jolliffe, answered alleging that Mehitable Higgins was the owner until December 17, 1889, when she conveyed to Jolliffe. They admit the tax deed was void, deny the possession of plaintiff and his grantor, aver that they bought for value and without notice, and ask for an establishment of their title to an undivided one-half.

The reply is quite long, but amounts to a reassertion of the allegations of the supplemental petition, a denial of all other facts alleged in the answer, and the pleading of certain other facts not necessary here to notice in detail.

The decree recites that the cause was heard on the supplemental petition, the answer of Jolliffe, Price, and Sayre, and the reply thereto, and the evidence. It finds for the defendants named as to the undivided one-half, quiets the title of that one-half interest in those defendants and the other one-half in the plaintiff.

The foregoing statement of the pleadings discloses a somewhat complicated state of title and a rather anomalous series of issues. Their statement has been necessary because of the importance of the pleadings in determining some of the questions arising in the case. In its further consideration it will be convenient to follow out the title as disclosed by the pleadings and evidence with occasional references to averments not heretofore stated.

It appears inferentially from the pleadings, and directly by a formal admission in the bill of exceptions, that one Oscar B. Selden was the patentee of the land in controversy. There was offered in evidence the record of a deed dated January 9, 1867, from Oscar B. Selden and wife purporting to convey the land to Mehitable Higgins and Stephen Hewitt Higgins. This record was objected to and properly

excluded, for the reason that the deed appeared to have been acknowledged by the grantees and not by the grantors. This deed is not very material, however, because it appears from the answer of the defendants that they claim a one-half interest under Mehitable Higgins. The deed is pleaded in the petition, and there is no denial of its execution in the answer, but on the contrary an averment that the defendants, not knowing the facts, neither admit nor deny the allegations of the petition in regard to conveyances therein alleged. The deed must therefore be taken as admitted.

The reply avers that Mehitable Higgins and Stephen Hewitt Higgins were coparceners, or joint tenants, and not tenants in common. There is not a particle of evidence to establish such facts. In the United States joint tenancies are not favored, and except in case of trustees or others acting in a fiduciary capacity, an estate in two or more persons is generally construed as a tenancy in common where joint tenancies have not been abolished by statute. (Tiedeman, Real Property, sec. 237, and cases cited.) It would, therefore, be presumed that Stephen Hewitt Higgins and Mehitable Higgins were tenants in common, but the distinction is of doubtful importance, in view of the fact clearly established that Mehitable Higgins was not dead at the time of the conveyance next referred to.

It is also alleged in the supplemental petition that Stephen Hewitt Higgins paid all the purchase price to Selden, and that Mehitable Higgins never had any equitable interest in the property. In the reply these allegations are modified by pleading that the money was paid by "——— Higgins" and Stephen Hewitt Higgins. There is no evidence in support of either of these averments; upon the contrary the testimony of Mehitable Higgins, which stands uncontradicted, is that a considerable portion, probably the greater portion, of the purchase money was paid out of her own funds.

. In 1867, then, Mehitable Higgins and Stephen Hewitt Higgins became legally and equitably tenants in common of the property. In May, 1869, a bond for a deed was executed by Stephen Hewitt Higgins, whereby he bound himself to convey the entire estate to Maurice J. McKelligon, and upon January 27, 1870, Stephen Hewitt Higgins executed to Maurice J. McKelligon a deed purporting to convey to him the entire estate. In 1887, McKelligon executed a deed to plaintiff purporting to convey to him the entire estate. From what has been said it is clear that McKelligon acquired from Higgins and conveyed to plaintiff only an undivided one-half interest, and plaintiff has no other paper title. A paper title to the other undivided one-half is established in the defendants by a series of deeds not necessary to recite in detail, but beginning with one dated December 17, 1889, from Mehitable Higgins to Laura Jolliffe. There is also in this chain a deed from Sarah Selden, widow and sole devisee of Oscar B. Selden, to Mehitable Higgins. This purports to convey the whole estate, but must be rejected as immaterial because of the conveyance in 1867 to the Higginses standing admitted by the pleadings. So far, then, as the paper title is concerned, one-half was thus far shown in the plaintiff and the other one-half in the defendants, as established by the decree. The plaintiff claims, however, title to the whole by adverse possession. The evidence shows quite clearly that McKelligon, at the time he took the conveyance from Higgins, and probably in 1870, went into possession of the land, lived upon it for some time himself, leased it to different tenants, and that it was occupied either by actual residence or by tenants cultivating the land with such occasional brief intervals as were required by changes in tenants, and without interruption on the part of adverse claimants until 1878. It may also be assumed for the purposes of this case that a conveyance by one of two tenants in common purporting to convey the whole estate, the

placing of the deed on record, and possession taken by the grantee, constitute an ouster of the other co-tenant and establish a possession adverse to him. (*Culler v. Motzer*, 13 S. & R. [Pa.], 356; *Foulke v. Bond*, 41 N. J. Law, 527; *Kinney v. Slattery*, 51 Ia., 353; *Kittredge v. Locks & Canals*, 17 Pick. [Mass.], 246; *Unger v. Mooney*, 63 Cal., 586.)

There is some question as to whether McKelligon's possession began in 1869 or 1870. At any rate it had not continued for a period of ten years, when the facts occurred which we are next called upon to notice. Upon March 4, 1878, a tax deed was issued to M. Swinny. This deed is admitted to have been void on its face, but such a deed is sufficient to establish color of title in cases where color of title is necessary. (*Gatling v. Lane*, 17 Neb., 77; *Lantry v. Parker*, 37 Neb., 353.) J. R. Hendrix was Mrs. Swinny's agent in the matter. He, at the time, made some trifling repairs on the premises, which seem then to have been unoccupied. Upon May 5, 1878, Hendrix leased the premises to one Campbell, who entered into possession and held until the following February, when one Tatom moved on as the tenant of Swinny. Upon October 22, 1879, the heirs of Swinny executed a quitclaim deed to Ellen McKelligon, the mother of Maurice. At this time Ellen McKelligon seems to have held a mortgage upon the premises executed by Maurice in 1878. There is evidence tending to show that the money paid to the Swinny heirs was furnished by Maurice and not by his mother; and it is claimed that the transaction amounted in effect to a redemption by McKelligon from the tax sale.

It is also claimed that McKelligon re-entered and leased the premises to different tenants, collecting the rents, and paying the taxes down to the time he conveyed to plaintiff. This is not, however, borne out by the evidence. Upon the contrary, it appears that McKelligon was acting under a power of attorney from Ellen McKelligon, and at least one of the leases made after the conveyance from the

Swinny heirs was made in the name of Ellen McKelligon by virtue of that power of attorney. The original petition charged that the tax deed was void and that the conveyance by the Swinny heirs to Ellen McKelligon was made without any interest in the grantors, and that Ellen McKelligon's will, devising the property to the children of Maurice, passed no title; and the prayer of the original petition was to set aside the tax deed and the deeds and wills in pursuance thereof, not for the reason that Ellen McKelligon was a trustee for Maurice and the plaintiff, but because it was an adverse, ill-founded claim and a cloud upon plaintiff's title. The plaintiff cannot therefore tack the two years' possession of the tax claimant to the subsequent possession or the prior possession of McKelligon in order to establish possession for the statutory period, nor can he claim that the possession subsequent to the deed from the Swinny heirs was Maurice McKelligon's own, in the face of the admission upon the pleadings and in face of the fact that Maurice, in making the lease on behalf of Ellen McKelligon, acted as her attorney in fact, and not on his own behalf. The plaintiff, therefore, failed to establish title by adverse possession.

It appears from the evidence that in 1878 Maurice McKelligon was declared a bankrupt, and a deed was made conveying his property to an assignee, and that there is no record of any discharge from bankruptcy. This matter is not important, in view of the conclusion reached that upon other grounds the defendants were entitled to have their title established to an undivided one-half. This is all they claim, and imperfections, if any, existing in plaintiff's title to the other one-half cannot be taken advantage of by these defendants. The matter is merely referred to here in order that it may be understood that we do not and cannot upon appeal from this decree adjudicate the effect of the bankruptcy proceedings.

JUDGMENT AFFIRMED.