Bray, Admr , *et al. v.* The First Avenue Coal Mining Co. *et al.*

BRAY, ADMINISTRATOR, ET AL. *v.* THE FIRST ·AVENUE
COAL MINING COMPANY ET AL.

[No. 18,122.   Filed October 29, 1897.]

PRINCIPAL AND SURETY.—*Mortgages.*—Where sureties on a note exe-
cuted by a mining company to a bank, made payments on such
note, and renewal notes signed by all of the parties were given
to the bank for the balance due, and a note executed by the princi-
pal to each surety for the amount paid by him, such payments will
not be treated as loans to the principal, but as payments on the
note upon which they were sureties and are covered by a mortgage
given by the principal, to indemnify them as such sureties.

LIMITATION OF ACTIONS.—*Notes Secured by Mortgage.—Indemnifying
Mortgages.*—Where an indemnifying mortgage was executed to se-
cure sureties on note of principal, and afterward such sureties pay
the  note secured by them and take the principal's note for the
amount so paid, such note is  subject only to the statutes of limita-
tions applicable to any notes secured by mortgage.

MORTGAGES. — *Secures the Debt, Not the Evidence of  the Debt.* — A
mortgage secures the debt, and no matter what changes are made
in the form of the evidence of such debt, the mortgage still remains
good as security therefor.

From the Vanderburgh Superior Court.   *Reversed.*

*Garvin & Cunningham, William M. Blakey, Matti-
son & Posey* and *Gilchrist & DeBruler,*for appellants.

*J. E. Williamson, G. K. Denton, R. C. Wilkinson,* ·
*A. J. McCutchan* and *N. G. Lindley,* for appellees.

HOWARD, J.—The appellant, James D. Parvin, was
appointed receiver of the appellee mining company,
and by order of court sold the property of said com-
pany for $4,250.00.   The matters here in controversy
have relation to certain liens upon said fund claimed
by the appellant Madison J. Bray, as administrator,
and the appellee, Charles E. Pittman.

From the finding of the court it appears, that on February 11, 1888, the appellee mining company executed to Cicero Buchanan, the appellant Bray's decedent, and to the appellee Pittman and others, a mortgage upon its real estate and other property; that at the time of the execution of said mortgage, the mortgagees therein named were liable as sureties upon the company's note therein described, to the People's Savings Bank of Evansville, in the sum of $3,000.00, and that said mortgage was given to secure said mortgagees as such sureties; that successive renewals of said note were made to said bank by said mining company, all of which renewals were secured by said mortgagees, and payments were made by said company at each renewal, until the 9th day of April, 1888, when the indebtedness was reduced to $1,500.00; that about April 11, 1888, the said Buchanan, Pittman, and the mortgagee, William S. Pollard, being the only sureties on said note who were then solvent, agreed among themselves and with said mining company, to each pay $500.00 on said $1,500.00 note whenever required by said bank, and that when said payments should be made the mining company should execute its notes in like amount to those sureties making such payments, as additional security for the sums so paid, each of said additional security notes to be itself secured by all the aforesaid mortgagees, other than the payee thereof; that in pursuance of said agreement the mortgagee Pollard, on April 17, 1888, paid to the president of the mining company the sum of $500.00, to be applied on said $1,500.00 note; and said $500.00 was at said date paid to said savings bank, and the note renewed by all the parties for $1,000.00, Pollard also receiving his additional security note as agreed; that on February 23, 1889, the mortgagee, Buchanan, in like manner, paid his $500.00, as agreed, which was

on the same day applied on the savings bank debt and the note renewed by all the parties for $500.00; Buchanan also receiving his additional security note for such payment; that on January 9, 1892, the mortgagee, Pittman, furnished his $500.00, to apply upon said indebtedness, which on said day was paid to said bank, thus paying in full the indebtedness to the bank; Pittman likewise receiving his additional security note. It would seem that the mining company kept up the interest due the bank, until the final payment of the debt. The court finds that the company also regularly paid to the three sureties the interest on the several amounts paid by them to the bank, paying to Pollard his interest to October 17, 1895; to Buchanan his interest to February 23, 1895; and to Pittman his interest to November 9, 1895; and that the amount due to each, principal, interest and attorney's fees is: To Pollard, $576.09; to Bray, as administrator of Buchanan, now deceased, $604.57; and to Pittman, $572.42. It is found, in addition, that the payments by Buchanan and Pollard were made more than six years before the bringing of this action, and more than six years before the death of Buchanan.

The conclusions of law by the court were: *First,* That Charles E. Pittman ought to recover of the mining company the sum of $500.00 with interest from January 9, 1892, and his costs. And that said sum is secured by the mortgage named in the findings, and is a lien upon the property therein described, and that the lien of said mortgage ought to be preserved and transferred to the proceeds arising from the sale thereof heretofore made by the receiver herein; and, *second,* that the causes of action in favor of William S. Pollard and Madison J. Bray, administrator of the estate of Cicero Buchanan, are barred by the statute of limitations, and they should take nothing thereby.

James D. Parvin, receiver, excepted to the first conclusion of law, and Madison J. Bray, administrator, excepted to the other conclusion. William S. Pollard declined to join in the appeal.

A part of the first conclusion of law seems to be inconsistent with the findings. The court found that the appellee Pittman paid his $500.00 on the bank indebtedness January 9, 1892, and that the mining company, the principal in that indebtedness, paid him his interest on the sum so paid by him, until November 9, 1895; and yet the conclusion of law is that Pittman ought to recover of the company $500.00, with interest from January, 9, 1892, thus allowing him double interest for a period of nearly four years. This was perhaps an inadvertence.

The remaining conclusions of law, that the rights of Pollard and Bray to recover are barred by the six years' statute of limitations, do not seem to be in harmony with that part of the first conclusion which holds that the sum due Pittman is secured by the mortgage, and is therefore a lien upon the property sold by the receiver, which lien should be preserved and transferred to the proceeds derived from said sale. It is not clear why the security money paid by one mortgagee should be protected by the mortgage, while the money paid by other mortgagees should go unprotected.

It was to reimburse the sureties in case they were compelled to make such payment that the mortgage security was given them. This security they had a right to rely upon, and we do not think the six years' statute of limitations was any bar to their right to recover. The three solvent sureties who had undertaken the payment of the debt to the bank, stood on an equality. They so recognized one another, and were so recognized by their principal, the mining company,

which gave to each of them its note for the amounts. paid by them respectively, and paid to each of them, up to the year 1895, interest on the several notes so given, as evidence of the part of the bank debt which each had been compelled to pay.

The claim that the payments so made by the sureties were voluntary, and were made by them to their principal, the mining company, and not to the bank, is quite untenable, as shown by the facts found and by the evidence. The money was paid, not for the use of the mining company, but to be applied upon the bank debt, as was at once done in each case. At the same time renewal notes, signed by all the parties, were given, as were also notes from the mortgagor to each party paying, for the amount then paid by him. All the steps taken in each case were but parts of one transaction. It is idle, then, to say that the money so paid was a loan to the mining company.

But it is said, that the mortgage given being but an indemnifying mortgage, and containing in itself no promise to pay the debt to the bank, or to repay the sums which the sureties should be compelled to pay on such indebtedness, it follows that the payments made must be regarded as, in effect, payments on account, and hence, that, for this reason alone, the six years' statute of limitations must apply, and the case of *Lilly* v. *Dunn*, 96 Ind. 220, and other like authorities are cited in support of this contention.

Counsel in making this argument seem to overlook the fact, as shown by the findings, that, at the time each payment was made by the sureties, the debtor company gave to each surety its note in evidence of the amount so paid by him. The sums so paid are therefore not payments on account, but payments evidenced by the promissory notes of the mortgagor; which notes, moreover, continued to be acknowledged

by payment of interest by the mortgagor up to the year 1895. As it was to indemnify against loss on account of payments so made by the sureties that the mortgage was given, and as the payments thus made are evidenced by the promissory notes of the mortgagor, the case is even stronger than if there was a simple promise to pay in the mortgage itself. The sureties hold the notes of the mortgagor as evidence of the debt paid by them, which debt is also secured by the mortgage. As to these notes, the six years' statute of limitations can, of course, have no application. The debt for which the mortgage was a security was, by the agreement of the parties, evidenced from the beginning by these promissory notes of the mortgagor; and being so evidenced, can be subject only to the statutes of limitation applicable to any notes secured by mortgage.

Besides, as we have recently said, in *Simmons Hardware Co.* v. *Thomas,* 147 Ind. 313, where, as in this case, the mortgage was given to indemnify sureties, and where numerous authorities are cited to the proposition. "A mortgage, strictly speaking, does not secure the note or other evidence of debt, but the debt itself; and no mater what changes may be made in the form of the evidence of indebtedness, the mortgage still remains good as security for the debt itself."

The facts found by the court, amply supported, as we think they are by the evidence, show that the appellee, Charles E. Pittman, should recover the sum of $500.00, with interest from November 9, 1895, and his costs and attorney's fees, and no more; and that the appellant Madison J. Bray, administrator, should recover the sum of $500.00, with interest from February 23, 1895, and his costs and attorney's fees. The amounts so due are secured by the mortgage referred to, and are liens upon the property sold by the re-

ceiver, and these liens ought to be preserved and transferred to the proceeds of said sale in the hands of the receiver.

The judgment is reversed, with instructions to the court to restate its conclusions of law as indicated in this opinion, and to enter judgment accordingly.