Ambler v. Jones.

---

Stephen J. Ambler et al., appellees, v. John C. Jones et al., appellants.

Filed December 15, 1917.   No. 19644.

1. **Homestead:** Contract to Convey: Enforcement. A contract in writing by the husband to convey the homestead occupied by himself and wife may not be enforced against the homestead.

2. ———: Deed in Escrow: Delivery. Under such contract there is no authority upon the part of one holding a deed for the premises in escrow to deliver the same to the purchaser.

3. ———: Conveyance: Execution: Evidence. If the signing of the deed has been procured by the husband through the coercion of his wife, and the same is known to the purchaser, the facts pertaining to the execution of the deed may be inquired into regardless of the certificate of acknowledgment made by the notary public.

4. ———: ———: Coercion. The husband cannot coerce his wife so as to take from her the homestead which she is unwilling to abandon or exchange.

5. ———: ———: Specific Performance: Evidence. Where the husband and wife occupied a homestead in Nebraska, and the wife was unwilling that the homestead should be exchanged for land in Colorado, which her husband had agreed in writing to take in lieu of the homestead, but she wished to continue to occupy the same, and the husband undertook to coerce her so that she would sign the deed with him and consent to its delivery to the Colorado parties, and he succeeded in so far as to obtain her signature to the deed, and the notary who certified to the acknowledgment on the deed saw her sign the instrument, but failed to inquire of her whether the execution of the same was her voluntary act and deed, but assumed that she willingly executed the instrument because he saw her sign it, the determination of an action to compel specific performance of the contract made by the husband, and for delivery of the deed then in the hands of one holding it in escrow, will be determined on the evidence, without regard to the certificate of the notary, if the plaintiffs have knowledge of the coercion of the wife by the husband.

Appeal from the district court for Cass county: James T. Begley, Judge. *Reversed and dismissed.*

*Samuel J. Tuttle*, for appellants.

*Clarence E. Tefft* and *Matthew Gering, contra.*

Hamer, J.

This action was brought by Stephen J. Ambler and Helen C. Ambler, plaintiffs and appellees, against John C. Jones and Minnie Jones, defendants and appellants, and Thomas Murtey and The First National Bank of Weeping Water, defendants and appellees. The plaintiffs Ambler are husband and wife. So are the defend-

ants Jones. The action is for specific performance. The plaintiff Stephen J. Ambler owned 17¼ acres of land in Delta county, in the state of Colorado, and the defendant John C. Jones owned 15 acres of land in Cass county, Nebraska. On or about January 14, 1915, they made a written agreement to trade and exchange these tracts. The contract bears that date. With the Ambler land was to go certain stock in a ditch company and certain water rights. The wives of the parties did not sign the agreement; and the next day, according to its date, a deed of the Nebraska land was signed by the defendants Jones, by which it was to be conveyed to Helen C. Ambler. The certificate of acknowledgment appears to have been signed by the notary public, Thomas Murtey, three days later, January 18, 1915. The plaintiffs seek to compel an exchange of the properties.

The wife, Minnie Jones, makes a separate answer to the effect that she did not sign her name to the deed "voluntarily and of her own free will, but by the coercion, threats and duress of her said husband, said John C. Jones, by repeated urgings and persuasion, even to the extent of leaving her, and himself going to the state of Colorado. And that these urgings, persuasions and threats, operating upon her exceedingly nervous state and condition, caused her to sign said deed." She also alleged that she was violently opposed to the signing of the said deed and to the exchange of their homestead for lands in Colorado, and that she never executed the deed otherwise than to sign it, and never delivered it or in any manner sanctioned its delivery; that she never "knowingly appeared before any notary public or other officer legally authorized to take her acknowledgment to said deed, nor did she ever acknowledge the same to be her voluntary act or deed, or use or employ other words in substance and effect meaning the same." The land which the plaintiffs seek to have conveyed is the Jones homestead.

The defendant John C. Jones answered that the land was the homestead of his family, consisting of his wife, his daughter and himself, and that they had occupied the same for more than ten years continuously; also that the contract made between Stephen J. Ambler and himself was made under the general statutes of Nebraska respecting agreements for the conveyance of lands and respecting conveyances of the homestead, and unenforceable and incapable of ratification.

Thomas Murtey one of the defendants, is the notary public in the case, and is also cashier of the First National Bank of Weeping Water. He verified the answer made by himself and the bank. Both Murtey and the bank in their answer disclaim any interest in the deeds and contract, and say that the same are in the hands of the clerk of the district court for Cass county, Nebraska, or in the hands of the court reporter. They seek to have the action dismissed and to be relieved from liability for the payment of costs.

Murtey testified that he drew the contract signed by Jones and Ambler, and also that he drafted the deeds; that he put the contract and the deeds in the vault of the bank. There seems to have been some hurry in the execution of the deeds. January 18, 1915, Murtey had both deeds and the contract in his possession. Jones objected that Ambler's abstract did not have a plat, and Murtey testified that he was not sure whether he got it from the county surveyor of Delta county, Colorado, or not, but he believed that he did. The testimony is not very clear upon that point. It barely suggests that Murtey probably tried to help Ambler complete the trade.

The case presents, first, the question of whether the deed was legally executed and acknowledged; second, whether it has been delivered, or is still within the control of Minnie Jones, who claims the land as her homestead.

, Minnie Jones testified that Mr. Jones tried to get her to sign the deed, and that she told him that she did not want to, and urged certain objections against the Ambler property, among which were that she "didn't want Mr. Ambler's orchard; it was too far away." She said that Mr. Murtey brought her the deed, and that she signed it. "Q. At any rate, when you got to the bank, at the request of either Mr. Murtey or your husband, you signed that deed, didn't you? A. I signed a deed, Yes, sir. Q. You did that voluntarily? A. No, sir. * * * Q. Was the signing by you of that deed your voluntary act? A. No, sir. No; it was not voluntary; no, indeed, it was not. * * * Q. While you were at Mr. Murtey's office, Mr. Murtey told you this was a deed, didn't he? A. No; Mr. Jones signed the deed, and Mr. Murtey took the pen from Mr. Jones and said, 'Now, your name Mrs. Jones,' and I signed my name."

Thomas Murtey testified that he did not recall asking Mrs. Jones when she signed the deed, if it was her voluntary act and deed; that he prepared the deed under Mr. Jones' direction, and that Mr. Jones and his wife signed the deed in his presence, and that it was acknowledged on the 18th day of January, 1915; that he saw Mrs. Jones sign the deed, and that she made no objection. "Q. But did she acknowledge that to be her voluntary act and deed? A. I can't remember as to the acknowledgment for her, whether she did or not. I can't remember. * * * Q. Well, did she acknowledge it to be her voluntary act and deed in substance? A. She did to my idea of things. Q. To your idea? A. Yes, sir. Q. What do you mean by that? A. She came in and voluntarily signed the deed before me, as a witness, as a notary."

John C. Jones testified: "Q. What, if anything, did Mr. Murtey say to you or your wife as to acknowledging the deed? A. He didn't say anything. Q. Did you hear him ask Mrs. Jones, or ask yourself, if this was your voluntary act and deed, or words to that effect? A. No, sir; I did not."

On the first point there is the testimony of Mr. and Mrs. Jones, and of the notary public, Murtey. This testimony appears to establish the fact that the usual formalities were not observed. It is not shown that Mrs. Jones was asked whether she acknowledged the instrument to be her voluntary act and deed. Because of the testimony of the notary public relating to the execution of the deed, and his refusal or failure to testify that Mrs. Jones acknowledged the instrument as her voluntary act and deed, we will examine all the evidence with a view to ascertaining whether she was coerced and unduly influenced. Women are generally home-builders and home-keepers. Mrs. Jones did not want to trade. She testified: "It was against my will from the beginning. * * * I didn't want to transfer it; I did not." She told Ambler and Mrs. Ambler that she did not want to trade. She said, referring to the Ambler property, "No; we don't want it; it is too far away. * * * Mr. Jones tried every effort he could to persuade me. I told him he couldn't persuade me; I didn't want to trade; I didn't want that orchard; I didn't want to trade."

Mrs. Jones testified that she did not go down to the bank where the deed was kept until after the expiration of about a week. When she finally did go and sign it, she says: "It was my hand, but not my will." She appears to have objected. "I made the remark in there (meaning the bank) they had all better keep their own land." She appears to have fought off the trade for two years. "Q. You said you fought it for two years? A. Ever since it commenced two years ago." She was unwilling to move to Colorado. She testified: "No; I never intended to go to Colorado. Q. Was that one of the reasons why you objected to this transaction? A. I objected to it because it was so far away. * * * I didn't want it;—that's the reason the trade didn't go through two years ago. I fought it down all the time, and talked it down for something near two years." She also

testified: "He told me, if I wouldn't go (to Colorado), he would go. Q. Did he threaten you in any other way?. Did he say, if you didn't sign this deed, he would leave you? A. He said he would go out there, and I could stay here. I don't know what he meant. You can compute it. He said I came up against him too much in his transactions." Jones appears to have tried to coerce his wife. He said to her: "I will have to go West."

The daughter of the defendants testified that her mother "was always very much opposed to it. Q. What specific objections did you hear your mother make? A. Why, she didn't like to leave our home, because she liked the home. Further than that, she did not want Mr. Ambler's orchard." Mrs. McKay testified that Mrs. Jones came to see her before the signing of the deed. "And then Mrs. Jones came down, and I said to her, 'Why, Mrs. Jones, is this so, that Mr. Jones traded?' and she said 'Yes.' I said, 'I thought you weren't going to?' and she said, 'Well, you know it is sorely against my will.'"

Plaintiffs' petition alleges: "That in pursuance of said written agreement made between the plaintiff, S. J. Ambler, and J. C. Jones, defendant herein, the said parties, with their spouses, on or about the 15th day of January, 1915, made and executed deeds to the real estate herein described and so owned by each other, and deposited the same in escrow with the defendants Thomas Murtey and the First National Bank of Weeping Water." This statement is not supported by the evidence. In no event was the contract between S. J. Ambler and J. C. Jones binding upon the defendant Minnie Jones. Thompson v. Foken, 81 Neb. 261. It is said in the above case: "The homestead is a favorite of the law. It is intended as a home, not only for the husband and wife, but their children as well. It is the policy of the courts to frown upon all attempts to secure title thereto, except the vendee brings himself clearly within the letter of the law."

The first step was to get the husband to sign the contract. Immediately following that a deed was presented to the husband, which he signed, and then to the wife, and she signed it. In any event that contract was void. Rev. St. 1913, sec. 3079; *Keeline v. Clark,* 132 Ia. 360; *Wallace v. Travelers Ins. Co.,* 54 Kan. 442; *Minnesota Stoneware Co. v. McCrossen,* 110 Wis. 316; *Gagliardo v. Dumont,* 54 Cal. 496; *Lichty v. Beale,* 75 Neb. 770.

The plaintiffs had notice that the contract was void as against any claim which Minnie Jones or her husband John C. Jones, might make to hold the land as a homestead. When the wife is the joint occupant of the homestead along with the husband, she cannot be made to give it up against her will, and the husband cannot by his act dispossess her or extinguish her legal rights.

Counsel for plaintiffs seem to have entertained the view that there must be a contract upon which to base the execution and delivery of the deeds. This court said in *Patrick v. McCormick,* 10 Neb. 1: "An escrow is a conditional delivery to a stranger to be kept by him until certain conditions are performed, and then to be delivered to the grantee." Of course, "conditions to be performed" implies a valid contract. In the instant case there was no contract, because the defendant John C. Jones could not make any that would bind the homestead. Section 3079, Rev. St. 1913, reads: "The homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife." *Weatherington v. Smith,* 77 Neb. 363, on rehearing, 77 Neb. 369; *Hedbloom v. Pierson,* 2 Neb. (Unof.) 799; *Lichty v. Beale,* 75 Neb. 770. In the case last above cited, this court held: "An executory contract for the sale of a homestead, made by either husband or wife without joinder by the other, is void as to the whole homestead tract, without regard to value, and not only will specific performance of

it not be decreed, but a breach of it will not afford a cause of action for damages."

If the case stood upon the certificate of the notary concerning the acknowledgment, contradicted only by the testimony of the defendant Minnie Jones, we might hesitate to inquire behind the certificate. But it stands upon the uncontroverted testimony of the defendants Minnie Jones and John C. Jones, and their daughter and Mrs. McKay, from which it appears that the plaintiffs Ambler knew that the tract sought to be conveyed was the homestead of the defendants Jones, and further knew that John C. Jones had coerced his wife, Minnie Jones, into signing the deed by threatening to go West, and by otherwise making it uncomfortable for her, and also knew that the defendant Minnie Jones was unwilling to give up her homestead.

The acknowledgment taken by the notary seems to have been irregular in the manner of its execution. He did not inquire of Mrs. Jones if she acknowledged the conveyance to be her voluntary act and deed, or that in substance, but seems to have assumed that she was willing to make the deed, inasmuch as she signed it. Under the decision of this court in *Council Bluffs Savings Bank v. Smith,* 59 Neb. 90, we feel constrained to hold that the taking of the acknowledgment, if it stood by itself, was at most only irregular; but the plaintiffs are in no sense innocent purchasers and they can obtain nothing by reason of the certificate of the notary. The evidence, taken as a whole, must determine the case. From this it is clear that the defendant Minnie Jones desired to continue to occupy the home in which she and her husband and daughter resided, and was unwilling to give up the same, claiming it as her homestead; that her husband, John C. Jones, attempted to coerce his wife into making the conveyance to Helen C. Ambler, and succeeded in so far as to procure her signature to the deed, but that she did not acknowledge the execution of the same to be her voluntary act and

deed; that the deed was not lawfully executed and acknowledged, and that it has not been delivered to the defendant Helen C. Ambler, and is still within the control of Minnie Jones, who claims her right of homestead and refuses to surrender such deed; that the plaintiffs have at all times been aware of the true facts concerning the proposed transaction and have acquired no rights thereby.

The judgment of the district court is reversed and plaintiffs' cause of action dismissed.

REVERSED and dismissed.

LETTON, J., concurring in conclusion only.

I agree to the conclusion only because I doubt the conclusion reached as to the existence of duress and that no acknowledgment was made by the wife; but specific performance is not a legal right, but rests in the discretion of the court. This is a trial *de novo.* There are facts in the case which warrant the refusal to award specific performance.

SEDGWICK, J., not sitting.