## TROYER v. MUNDY.
### No. 9459.

Circuit Court of Appeals, Eighth Circuit.
July 22, 1932.

Rehearing Denied Sept. 7, 1932.

Alfred C. Munger, of Omaha, Neb. (Rodney S. Dunlap and Earl J. Lee, both of Fremont, Neb., Crossman, Munger & Barton, of Omaha, Neb., and Abbott, Dunlap & Corbett, and Courtright, Sidner, Lee & Gunderson, all of Fremont, Neb., on the brief), for appellant.

Joseph E. Daly, of Fremont, Neb., for appellee.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

GARDNER, Circuit Judge.

This is a suit in equity brought by the appellant as trustee in bankruptcy of Peter Mundy, bankrupt, against appellee, Anise Mundy, to set aside a warranty deed executed and delivered to Anise Mundy by Peter Mundy on January 11, 1928, which conveyed to her eighty acres of farm land in Dodge county, Neb., and also to set aside a mortgage upon the same property given by Peter Mundy to Anise Mundy, dated October 20, 1925, and recorded in the office of the register of deeds of Dodge county, Neb., on October 29, 1925. The parties will be referred to as they were designated in the lower court.

The land involved was purchased by Peter Mundy from the father of Anise Mundy, the defendant, in 1918 for the sum of $14,000, $3,000 of which was paid in cash and $11,000 of which was secured by purchase-money mortgage. Anise Mundy at the time of all the transactions involved in this action was and now is the wife of Peter Mundy. The father of Mrs. Mundy died, leaving as a part of his estate the $11,000 mortgage. Mrs. Mundy's share in this mortgage as a beneficiary under her father's will and as a creditor of the estate amounted to $6,800, and the share of her sister to $3,700. In order to effect a distribution of the estate and a proper division between the sisters, they released the original $11,000 mortgage, and in lieu thereof took back two mortgages of equal priority, one to the sister in the sum of $3,700, and one to Mrs. Mundy for $6,800. In 1925 the sister found a party by the name of Robert Scott, who was willing to advance to her the amount of her mortgage, if it could be made a first mortgage, and, in order to accomplish this purpose, the two sisters released of record the liens of their respective mortgages, and Peter Mundy then renewed them, executing a first mortgage to Scott for $3,700, and a second mortgage to Anise Mundy for the amount then due her, which was $8,500. This mortgage for $8,500 is the mortgage which plaintiff seeks to set aside in this suit.

On January 11, 1928, Peter Mundy executed and delivered to Anise Mundy warranty deed for the eighty acres of land, which deed was recorded on the day of its date. On February 23, 1928, he was adjudged bankrupt. In the bankruptcy proceedings there were filed and allowed as unsecured claims the claim of the First State Bank of North Bend, Neb., in the sum of $7,719.43, and the claim of the First National Bank of North Bend, Neb., in the sum of $8,010. These claims were based upon promissory notes given by Peter Mundy to these respective banks. The record does not clearly disclose when the indebtedness upon which these claims are based first arose, but in each instance it was in existence some time prior to 1928.

The bankrupt and his family lived on this farm land until February, 1927, and from 1918 until 1927 it was without doubt the homestead of the family; and, although the family moved in 1927 to a house in North Bend, Neb., defendant contends, and the lower court found, that there was no abandonment of the homestead.

The mortgage last given to the defendant, and here in question, was signed alone by Peter Mundy. The acknowledgment of the execution of the mortgage recites that Anise Mundy appeared and acknowledged the execution of the instrument, but does not recite any appearance nor acknowledgment by Peter Mundy, the mortgagor. Parol evidence was introduced in the lower court to show that this recital in the certificate of acknowledgment was an error of the notary preparing the mortgage, and that Peter Mundy actually acknowledged the instrument before the notary public.

The deed of January 11, 1928, by Peter Mundy to Anise Mundy was without any present consideration.

The lower court sustained the mortgage to Anise Mundy, and held that the mortgaged property did not exceed in value the amount of the first mortgage and the mortgage to Anise Mundy; and it is conceded that, if the $8,500 mortgage to Anise Mundy is valid, there is no equity in the property to which the rights of creditors through the plaintiff might attach. The court entered decree dismissing the suit of the trustee because there was no equity in the property above the liens of the two mentioned mortgages. From this decree the trustee has appealed and seeks reversal on the grounds that (1) the $8,500 mortgage was not executed and acknowledged as required by the laws of Nebraska pertaining to the execution and acknowledgment of instruments affecting the homestead, and hence is void; (2) the recording of the mortgage did not operate as constructive notice; (3) the certificate of acknowledgment showing acknowledgment by the mortgagee and not by the mortgagor was fatally defective; (4) the homestead was abandoned in 1927; (5) Anise Mundy is not entitled to protection as the owner of a purchase-money mortgage; and (6) the trustee is vested with the rights of a judgment creditor holding an execution returned unsatisfied.

It is conceded that at and prior to the time of the execution of the $8,500 mortgage the land constituted the homestead of Peter Mundy and his wife, Anise Mundy. In construing the homestead statute of Nebraska (section 40-104, Comp. St. Neb. 1929), the Supreme Court of that state has held that, while the homestead cannot be conveyed or incumbered, except by a deed executed and acknowledged by both the husband and wife, yet a conveyance of the homestead from one spouse to the other does not require that they both execute and acknowledge the instrument. Storz v. Clarke, 117 Neb. 488, 221 N. W. 101; Ambler v. Jones, 102 Neb. 40, 165 N. W. 886; Anderson v. Schertz, 94 Neb. 390, 143 N. W. 238; Anderson v. Cusack, 115 Neb. 643, 214 N. W. 73; Interstate Savings & Loan Ass'n v. Strine, 58 Neb. 133, 78 N. W. 377; Furrow v. Athey, 21 Neb. 671, 33 N. W. 208, 59 Am. Rep. 867; Cizek v. Cizek, 69 Neb. 797, 96 N. W. 657, 99 N. W. 28, 5 Ann. Cas. 464.

The Nebraska statutes (section 76-213) provide that: "Every officer, who shall take the acknowledgment or proof of any deed, shall indorse a certificate thereof signed by himself on the deed, and in such certificate shall truly and specifically set forth the matters hereinbefore required to be done, known or proved, on such acknowledgment or proof, together with the names of the witnesses examined before such officer, and their places of residence, and the substance of the evidence by them given."

Section 76-216, Comp. St. Nebraska 1929, provides that the certificate of proof of acknowledgment and the certificate of the genuineness of the signature of any officer, in cases where such is required, must be recorded together with the deed so proved or acknowledged, and, unless the certificates be recorded, neither the deed nor a transcript thereof shall be read or received in evidence.

Section 76-219 provides that, unless previously acknowledged or proven in the manner prescribed, the conveyance shall not be deemed lawfully recorded.

■ The lower court, in a conclusion of law entered at the close of all the evidence, held that parol evidence was not admissible to prove the fact that the mortgage had been properly acknowledged by the mortgagor, and that the recitals contained in the notary's certificate of acknowledgment were not subject to impeachment by such evidence. In so holding the court was clearly correct. Solt v. Anderson, 71 Neb. 826, 99 N. W. 678;

Keeling v. Hoyt, 31 Neb. 453, 48 N. W. 66; Elliott v. Peirsol, 1 Pet. 328, 7 L. Ed. 164.

■ The filing and recording of a mortgage is not constructive notice to a trustee in bankruptcy, unless there has been a substantial compliance with the requirements of the state statute as to acknowledgment. Hauser v. Callaway (C. C. A.) 36 F.(2d) 667; Bank of Hampton v. Wright (C. C. A.) 35 F.(2d) 321; Albert Pick & Co. v. Wilson (C. C. A.) 19 F.(2d) 18. Where, as in the instant case, the acknowledgment not only failed to show an appearance and an acknowledgment of the execution of the instrument by the grantor or mortgagor, but affirmatively showed an appearance and an acknowledgment of the execution of the instrument by the grantee or mortgagee, there was clearly not a substantial compliance with the requirements of the Nebraska statute, and the acknowledgment was therefore fatally defective, and the Nebraska Supreme Court has so held. Maxwell v. Higgins, 38 Neb. 671, 57 N. W. 388.

If, therefore, defendant must rely upon the constructive notice afforded by the recording or attempted recording of her mortgage, it seems clear that her mortgage cannot be sustained. She contends, however, that the two creditors whose claims were proved and allowed, and who were the only creditors proving claims, had actual notice of her rights in the property, and hence the question of constructive notice becomes immaterial.

■ Conceding, without deciding, defendant's contention as to the effect of actual notice, we do not believe the evidence sustains the finding of the court to the effect that these creditors had such actual notice. As to this question the defendant had the burden of proof. Mr. Cusak, called as a witness, testified that he had been with the First National Bank of North Bend, Neb., for twenty-five years, but did not testify in what capacity; that Robert Scott, the owner of the $3,700 mortgage, was his uncle, and that the mortgage was made in the bank; that he knew about Mrs. Mundy's sister's mortgage being released and the other mortgage to Robert Scott being made. He said he knew "in a general way how the $11,000 mortgage to John Herron was taken up." Thomas H. Fowler testified that from 1913 to 1920 he was cashier of the First National Bank of North Bend, that he was executor of the will of John Herron, deceased, and that he knew of the settlement of the estate, and that Mrs. Kell, the sister of Mrs. Mundy, got a new mortgage for $3,700, and Mrs. Mundy a mort-

gage for $6,800, in place of the old $11,000 mortgage.

Fowler prepared the $8,500 mortgage, and was the notary who made the erroneous certificate of acknowledgment. As the mortgage in question was drawn in 1925, long after Fowler had severed his connection with the bank, his knowledge could not be imputed to the bank, nor was the bank charged with his knowledge acquired as executor, as it appears that Mr. Herron died in 1921, one year after Fowler severed his connection with the bank. The evidence fails to show that Cusak had such a position with the bank that notice to him would be notice to the bank, and such facts as he disclosed in his testimony failed to show that he was aware of the $8,500 mortgage.

As to the other bank the evidence is wholly insufficient. The only evidence bearing on the subject is that of Peter Mundy, who said, "I talked to Tom J. Kastle, President of the First State Bank, about my wife's note and mortgage, about six months before the bank closed." The only evidence as to when the bank closed is that it closed in 1928. Mundy was adjudged bankrupt on the 23d day of February, 1928, so that defendant has failed to prove that this bank had notice of the mortgage prior to the adjudication or the appointment of a trustee, which was on March 15, 1928.

■■ Defendant contends, however, that her mortgage interest should be protected, on the theory that it is in the nature of a purchase-money mortgage, and the lower court so held. The original mortgage given to defendant's father was without question a purchase-money mortgage. As such it was entitled to the highest consideration of a court of equity, taking precedence over prior judgments and all other existing and subsequent claims and liens against the mortgagor to the extent of the land sold. In effect it was a limitation upon the title which Peter Mundy took, rather than an incumbrance upon the title conveyed. United States v. New Orleans, etc., Ry. Co., 12 Wall. 362, 20 L. Ed. 434; Warren Mtg. Co. v. Winters, 94 Kan. 615, 146 P. 1012, 1013, Ann. Cas. 1916C, 956; Foster Lbr. Co. v. Harlan County Bank, 71 Kan. 158, 80 P. 49, 114 Am. St. Rep. 470, 6 Ann. Cas. 44; Keefe v. Cropper (Iowa) 190 N. W. 971; Id., 196 Iowa, 1179, 194 N. W. 305; Green v. Saxton, 196 Iowa, 1086, 196 N. W. 27; Dusenbury v. Hulbert, 59 N. Y. 541; Boies v. Benham, 127 N. Y. 620, 28 N. E. 657, 14 L. R. A. 55; Lassen v. Vance, 8 Cal. 271, 68 Am. Dec. 322; Brace v. Superior Land Co., 65 Wash. 681, 118 P. 910; Strong v. Ehle, 86 Mich. 42, 48 N. W. 868; Fecteau v. Fries, 253 Mich. 51, 234 N. W. 113; Stewart v. Smith, 36 Minn. 82, 30 N. W. 430, 1 Am. St. Rep. 651; Marin v. Knox, 117 Minn. 428, 136 N. W. 15, 40 L. R. A. (N. S.) 272; Powers v. Pense, 20 Wyo. 327, 123 P. 925, 40 L. R. A. (N. S.) 785.

In Warren Mortgage Co. v. Winters, supra, decided by the Supreme Court of Kansas, the rule is thus stated: "One who executes a purchase-money mortgage is not regarded as obtaining the title and then placing an incumbrance on it. He is deemed to take the title charged with the incumbrance, which has priority even over pre-existing claims."

In Keefe v. Cropper, 196 Iowa, 1179, 194 N. W. 305, 306, the Supreme Court of Iowa, in announcing the same rule, said: "A 'purchase-money mortgage' is what the term implies, and is predicated on the theory that upon the simultaneous execution of the deed and mortgage the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and, without stopping, vests in the mortgagee. It follows, therefore, that no lien of any character can attach to the title of the mortgagee."

■■ In the settlement of her father's estate, a part of this mortgage was assigned to defendant. Being a purchase-money mortgage, given to secure a particular debt, it remained valid in equity for that purpose, whatever form the debt might assume, if it could be traced. Jones v. New York Guaranty & Indemnity Co., 101 U. S. 622, 25 L. Ed. 1030. The lien of a purchase-money mortgage having attached, it was not displaced by any change in the form of the security. Defendant has clearly traced her debt and mortgage to the original purchase-money mortgage, and in equity her purchase-money mortgage interest should be sustained. Indeed, it has been held by the Supreme Court of Nebraska that a mortgage given to secure the purchase price of a homestead to be established is valid, even though not executed by both the husband and wife. Irwin v. Gay, 3 Neb. (Unof.) 153, 91 N. W. 197; Prout v. Burke, 51 Neb. 24, 70 N. W. 512. The subsequent dealings with the original mortgage have not changed the inherent nature of the mortgages taken in its place. They are to be regarded as purchase-money mortgages. Jones v. Parker, 51 Wis. 218, 8 N. W. 124; Carr v. Caldwell, 10 Cal. 380, 70 Am. Dec. 740; Salem Natl. Bank v. White, 159 Ill. 136, 42

N. E. 312; Austin v. Underwood, 37 Ill. 438, 87 Am. Dec. 254; Freeburg v. Eksell, 123 Iowa, 464, 99 N. W. 118; Jones v. New York Guaranty, etc., Co., 101 U. S. 622, 25 L. Ed. 1030; Moody v. Stubbs, 94 Kan. 250, 146 P. 346, Ann. Cas. 1917C, 362; Bray v. First Ave. Coal Mining Co., 148 Ind. 599, 47 N. E. 1073.

It remains to consider whether, under the Bankruptcy Act and the statutes of Nebraska, the trustee in bankruptcy may assert a claim or interest against the property greater than that actually owned by the bankrupt. Does the bankruptcy law clothe the trustee with any right in the property superior to that which an unsecured creditor in Nebraska would have in it? Bankruptcy Act, § 47a (2), as amended in 1910, section 75 (a) (2), title 11, USCA, provides as follows: " * * * Such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

 First, it must be noted that this property is not, and has not been, in the custody of the bankruptcy court. As to it, the most that can be said is that the trustee is vested with the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. The rights and remedies of the trustee, whatever they may be, came into existence when the petition in bankruptcy was filed. Albert Pick & Co. v. Wilson (C. C. A.) 19 F.(2d) 18. The trustee is in the position of a lienholder, rather than that of an unsecured creditor. Title to this land was not in the bankrupt when he filed his petition in bankruptcy. The statute of Nebraska, chapter 59, Laws 1927, provides that: "The lands and tenements of the debtor within the county where the judgment is entered, shall be bound for the satisfaction thereof, only from the day on which such judgments are rendered. All other lands, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution."

Nebraska has had a similar statute since statehood, and it has been held in that state that a judgment is not a lien on an equitable interest in real estate. It has also been held that the lien of a judgment attaches only to the actual interest which the judgment debtor had in the land at the time the judgment was rendered, subject to every equity existing against the debtor at that time. Nessler v. Neher, 18 Neb. 649, 26 N. W. 471; Mansfield v. Gregory, 8 Neb. 432, 1 N. W. 382; Knaak v. Brown, 115 Neb. 260, 212 N. W. 431, 434, 51 A. L. R. 237; Doe v. Startzer, 62 Neb. 718, 87 N. W. 535; First Natl. Bank v. Edgar, 65 Neb. 340, 91 N. W. 404; Pearson v. Davis, 41 Neb. 608, 59 N. W. 885; Roberts v. Robinson, 49 Neb. 717, 68 N. W. 1035, 59 Am. St. Rep. 567; Chicago, B. & Q. R. Co. v. First Natl. Bank, 58 Neb. 548, 78 N. W. 1064.

In Knaak v. Brown, supra, the court said: "Indeed, this bank, by the filing of its transcript, obtained a lien. But its lien attached only to the actual interests of the judgment debtor, Van Valin, in the mortgaged premises, and was subject to all existing equities, whether of record or not."

This court in Lewin v. Telluride Iron Works Co., 272 F. 590, 594, considered the nature of a lien acquired by a trustee in bankruptcy. In the course of the opinion in that case by Judge Walter H. Sanborn, it is said inter alia:

"The trustee here stands in the shoes of the bankrupt lessee and had no higher or better right than it unless such higher or better right was vested in him by section 47a as amended by the Act of June 25, 1910, just quoted. Unless that grant has such an effect, the equitable lien and the title under it of the lessor and its assignees are prior in right and superior in equity to any title or right of this trustee. In the absence of such an express grant, the trustee takes the bankrupt's property subject to all rights and equities existing in favor of third persons against the bankrupt. York Mfg. Co. v. Cassell, 201 U. S. 344, 352, 26 S. Ct. 481, 50 L. Ed. 782; Hurley v. Atchison, T. & S. F. Ry. Co., 213 U. S. 126, 130, 132, 133, 134, 29 S. Ct. 466, 53 L. Ed. 729; Root Mfg. Co. v. Johnson, 135 C. C. A. 139, 219 F. 397, 406; In re Sherwoods, Inc., 127 C. C. A. 304, 210 F. 754, 760, Ann. Cas. 1916A, 940. But under the facts of this case section 47a as amended has no such effect because at the time of the filing of the petition in bankruptcy, and thereafter to the present day, the property in controversy was not in the custody of and was not coming into the custody of the bankruptcy court. On the other hand, it was neither in the possession of the bankrupt nor of the trustee, nor of any other officer of that court, and it has never come

and doubtless never will come into the possession or custody of any of them. * * * It fell, therefore, in the second class of property described in section 47a as amended. It was property not in the custody of the bankruptcy court and not coming into its custody, and the only rights and remedies regarding it which the trustee had were those of a judgment creditor holding an execution against the bankrupt duly returned unsatisfied at the time the petition was filed. What rights and remedies then had a judgment creditor of the bankrupt holding an execution duly returned unsatisfied at the time of the filing of the petition in bankruptcy? Had he any lien or right to the property superior to that of the lessor? The answer to these questions must be found in the statutes of the state of Colorado but those statues and the decisions of the courts thereunder satisfy that a judgment creditor with an execution returned unsatisfied has no lien upon any of the personal property of his debtor in Colorado. While the delivery of an execution to the sheriff with instructions to collect the judgment on which it is sued out from the personal property of the debtor creates a lien upon that property for the collection of the judgment from the delivery of the execution, a delivery with instructions to do nothing toward such collection or a delivery with instructions to do nothing until further orders, or to return the execution unsatisfied, much more, the return of it unsatisfied, waives the right to enforce it and discharges the lien of it as against the defendant and all claiming under him. * * *

"The discussion of the question presented has proceeded on the theory that the property in controversy was personal property. If, however, it was real estate, a judgment creditor with an execution unsatisfied would have had no lien upon it in the absence of the previous filing of a certified copy of the docket entry of the judgment with the clerk of the county. There is no evidence of any such filing in this case and the rights of a judgment creditor who had made such a filing were not conferred upon the trustee by the amendment of 1910, Revised Statutes of Colo. 1908, § 3609. The result is that under the statutes of Colorado and the facts disclosed by this record the amendment of June 25, 1910, conferred upon the trustee no greater rights, liens, or remedies against the lessor than he would have had if that amendment had not been made. He had the title to the property of the bankrupt conferred by section 70a [11 USCA § 110] and the other sections of the bankruptcy law and no more,

and that title was 'the title of the bankrupt as of the date he was adjudged a bankrupt,' and that title was subject to the lien of the lessor evidenced by the lease and by the persuasive equity in its favor."

This decision is persuasive, if indeed, not controlling, in the instant case; and we are clear that the trustee can assert no claim or interest in this property which would displace the interest of defendant in the purchase-money mortgage. It is conceded by both parties that there is no equity in the property beyond the amount of that mortgage, and hence the other questions presented become immaterial.

The judgment appealed from is therefore affirmed.